# United States Court of Appeals
## For the First Circuit

No. 23-1576

GLEYSI IDALIA DIAZ-VALDEZ,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Montecalvo, and Rikelman,
Circuit Judges.

Kristian R. Meyer, with whom Kevin P. MacMurray and MacMurray & Associates were on brief, for petitioner.

Dana M. Camilleri, Senior Trial Attorney, with whom Anthony P. Nicastro, Assistant Director, Office of Immigration Litigation, and Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, were on brief, for respondent.

Mary Holper, with whom Cassandra Harris and Deepti Sailappan were on brief, for amici curiae Boston College Legal Services LAB Immigration Clinic, Boston University School of Law Immigrants' Rights and Human Trafficking Program, Central West Justice Center, Justice Center of Southeast Massachusetts, Massachusetts Law Reform Institute, Northeastern University School of Law Immigrant Justice Clinic, Political Asylum/Immigration Representation Project, Suffolk University Law School Immigrant Justice Clinic, Susanna Stern, Paul Schmidt, Philip Torrey, Sabrineh Ardalan, Jane

Rocamora, Deborah Gonzales, Anna Welch, Sara Cressey, and Roni Amit.

---

November 22, 2024

---

**RIKELMAN**, <u>Circuit Judge</u>.  After she was initially denied asylum and other relief, Gleysi Idalia Diaz-Valdez ("Diaz") tried to appeal to the Board of Immigration Appeals ("BIA").  She mailed her Notice of Appeal to the proper BIA facility in Virginia using Federal Express's ("FedEx") next-day delivery service, anticipating that her filing would arrive on the morning of the appeal deadline.  But the BIA received Diaz's filing one day late, which resulted in a summary dismissal of her appeal.  Diaz then requested that the BIA accept her late filing, in light of FedEx's failure to deliver the appeal package on time.  Construing her request as a motion to reconsider its summary dismissal, the BIA decided not to equitably toll the appeal deadline and denied the motion.

In this petition for review, Diaz challenges the BIA's denial of her request to equitably toll the appeal deadline.  We conclude that the BIA applied the incorrect legal standard, overlooked certain evidence, and departed from its precedent in determining that Diaz was not entitled to equitable tolling.  Thus, we grant Diaz's petition, vacate the BIA's order, and remand for further proceedings.

## I.   BACKGROUND

At the age of nineteen, Diaz fled Guatemala, the country of her birth and citizenship.  She entered the United States near El Paso, Texas, in May 2019, followed shortly by her spouse.  Diaz

- 3 -

was arrested just inside the border, served with a Notice to Appear alleging that she was subject to removal, and released on bond two months later. She then relocated to the greater Boston area to stay with family.

Once in the Boston area, Diaz applied for asylum and withholding of removal, claiming that she faced persecution in Guatemala based on her political opinion and membership in a particular social group. She also requested protection under the Convention Against Torture. Her application explained that gang members had murdered her father-in-law, twice attempted to kill her husband, and, during one of those attempts, tried to run her over with a car, requiring Diaz to seek medical attention for a head injury. After a hearing, an immigration judge ("IJ") denied her requests for relief on August 6, 2021.

This petition focuses on Diaz's unsuccessful effort to appeal the IJ's order to the BIA. Noncitizens must file a Notice of Appeal with the BIA "within 30 calendar days" of a decision by an IJ. 8 C.F.R. § 1003.38(b); see also id. § 1003.3(a)(1). Under BIA regulations, Diaz's thirty-day clock began to run on August 6, the day the IJ mailed his written decision to her, even though Diaz did not receive the decision until August 13. See id. § 1003.38(b). Taking into account a final weekend and holiday, Diaz's deadline for filing the Notice of Appeal with the BIA was

- 4 -

Tuesday, September 7, 2021, the day after Labor Day.[1]  The BIA requires that a Notice of Appeal be sent to its facility in Falls Church, Virginia, so the vast majority of individuals filing appeals cannot personally deliver their papers to the BIA.[2]

At the heart of this case is the BIA's filing rule.  The BIA deems a Notice of Appeal filed on the date that it is received by the BIA, not the date on which it is sent.  8 C.F.R. § 1003.38(c).  Accordingly, under the BIA's receipt rule, most individuals must account for the time it takes to mail their Notice of Appeal to the BIA in Virginia.  Given its filing rules, the BIA advises noncitizens like Diaz to, "whenever possible, use overnight delivery couriers (such as Federal Express, United Parcel Service, DHL, etc.) to ensure timely receipt."  See U.S. Dep't of Justice, supra note 2.

_____

[1] A Notice of Appeal from an IJ's ruling must "be filed directly with the Board of Immigration Appeals within 30 calendar days after the stating of an immigration judge's oral decision or the mailing or electronic notification of an immigration judge's written decision.  If the final date for filing falls on a Saturday, Sunday, or legal holiday, this appeal time shall be extended to the next business day."  8 C.F.R. § 1003.38(b).  In this case, the thirty-day deadline fell on September 5, 2021.  Because September 5 was a Sunday and September 6 was Labor Day, the appeal deadline was September 7, 2021.

[2] See BIA Practice Manual: 3.1 - Delivery and Receipt, U.S. Dep't of Justice, https://www.justice.gov/eoir/reference-materials/bia/chapter-3/1 [https://perma.cc/JZ37-9878] (last visited Nov. 21, 2024).

According to Diaz, she sent her Notice of Appeal and supporting documents to the BIA on Saturday, September 4, 2021, using FedEx's guaranteed next-day delivery service, expecting that the appeal package would be delivered on Tuesday, September 7. FedEx delivered the Notice of Appeal to the BIA on September 8, however, and the BIA deemed it filed on that date. Because Diaz's Notice of Appeal arrived one day after the filing deadline, the BIA summarily dismissed Diaz's appeal as untimely, as permitted by its regulations. See 8 C.F.R. § 1003.1(d)(2)(i)(G).

Diaz then moved to reconsider and requested that the BIA treat her appeal as timely filed. Diaz's counsel explained:

> During a meeting on the afternoon of September 3, 2021, [Diaz] notified Counsel of her intention to appeal the decision of the Immigration Judge.
>
> On September 4, 2021, Counsel for [Diaz] sent the Notice of Appeal to the BIA through FedEx via overnight delivery service . . . .
>
> FedEx, however, did not ship the package until September 7, 2021, due to the Labor Day Federal Holiday.

(Emphasis added.) With her motion to reconsider, Diaz submitted a number of documents including a copy of her counsel's original Notice of Entry of Appearance, the IJ's decision, the original Notice of Appeal, the money order for the filing fee for the original Notice of Appeal, and a FedEx-generated document tracking the package's delivery progress (the "FedEx Tracker"). The record

before the BIA also included the BIA's official receipt of Diaz's filing, BIA-timestamped versions of the original Notice of Entry of Appearance and of the original Notice of Appeal, and a scan of the FedEx label accompanying Diaz's original appeal package.[3]

The record includes multiple pieces of evidence documenting the chronology surrounding Diaz's appeal filing. For example, on Friday, September 3, 2021, Diaz's counsel signed the original Notice of Entry of Appearance and Notice of Appeal and completed proofs of service of those filings on the U.S. Immigration and Customs Enforcement office in Boston. The money order for the appeal filing fee also indicates that it was issued on Friday. The FedEx label for the entire appeal package was generated at 3:42 p.m. on Saturday, September 4, according to a timestamp on the label. Further, the FedEx Tracker notes "Deliver Weekday, Saturday Pickup" under the "Special Handling Section." But it also shows that FedEx shipped the package on Tuesday, September 7, and delivered it at 10:10 a.m. on Wednesday, September 8. Finally, the BIA "acknowledge[d] receipt" of Diaz's appeal on September 8. That said, the BIA's timestamps of each page of

---

[3] The government has certified all of these documents as part of the administrative record. Thus, we proceed with the understanding that the BIA had all of these documents before it when it made its decision. See Oceana, Inc. v. Ross, 920 F.3d 855, 865 (D.C. Cir. 2019) ("[T]he designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity." (quoting Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993))).

Diaz's appeal package ranged from 4:33 a.m. to 4:35 a.m. on September 8, which precedes FedEx's claimed delivery time by nearly six hours.

The BIA denied Diaz's motion to reconsider, after interpreting her motion as a request for equitable tolling of the appeal deadline. The BIA reasoned:

> The respondent claims that she diligently pursued her rights because she delivered her appeal to Federal Express 3 days before the filing deadline, but that the delivery service did not ship the package until September 7, 2021, because of the federal holiday on September 6, 2021. However, the record contains insufficient evidence that the respondent delivered the appeal to Federal Express on the claimed date. Moreover, the respondent's contention that the federal holiday is an exceptional circumstance for her untimely filing is unpersuasive because the holiday is not an unexpected event. See Matter of Morales-Morales, 28 I. & N. Dec. 714, 717 (BIA 2023). The respondent's reliance on a courier service, where she claims she delivered her appeal 3 days before the filing deadline over a holiday weekend, is an insufficient reason to grant the respondent's motion or to excuse the late filing. See id. at 717-18 . . . .

(Emphasis added.) Diaz timely petitioned this court for review of the BIA's denial of her motion to reconsider.

## II. STANDARD OF REVIEW

We have jurisdiction over the BIA's denial of Diaz's motion to reconsider. See 8 U.S.C. § 1252(a)(1). Because Diaz did not petition for review of the BIA's initial summary dismissal

- 8 -

of her appeal, we lack jurisdiction over that prior decision.  See Hurtado v. Lynch, 810 F.3d 91, 93 (1st Cir. 2016).

The parties spar to some extent about our standard of review.  But our precedent is clear that we review the BIA's denial of a motion to reconsider for abuse of discretion.  See Martinez-Lopez v. Holder, 704 F.3d 169, 171 (1st Cir. 2013).  We therefore uphold the BIA's decision unless it lacks "a 'rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'"  Onwuamaegbu v. Gonzales, 470 F.3d 405, 407 (1st Cir. 2006) (quoting Zhang v. INS, 348 F.3d 289, 293 (1st Cir. 2003)).

The parties do agree that, even under the umbrella abuse-of-discretion standard, we review the BIA's legal conclusions de novo.  These same principles apply to the BIA's denial of a request for equitable tolling:  We review the ultimate decision for abuse of discretion and any underlying legal conclusions de novo.  See James v. Garland, 16 F.4th 320, 326 (1st Cir. 2021); Tay-Chan v. Barr, 918 F.3d 209, 213 (1st Cir. 2019) (explaining that we uphold the BIA's decision unless it "rests on a material error of law or a manifestly arbitrary exercise of judgment" (quotation marks and citation omitted)).

What the parties disagree on, at least in their briefs, is whether the BIA's ruling here hinged on primarily legal or factual analysis.  The BIA's decision arguably could be read as

refusing to credit the statements of Diaz's counsel about the mailing of the Notice of Appeal, in which case the BIA's ruling denying the motion would have been primarily factual. But during oral argument, the government indicated that this was not how it read the BIA's decision.[4] Rather, the government contended, the BIA ruled that there was insufficient record evidence to demonstrate that Diaz had delivered the Notice of Appeal to FedEx on September 4 and, accordingly, Diaz had not carried her burden to show she was entitled to equitable tolling. As the government framed the issue, the BIA concluded that counsel's statement did not "provide enough information [to] know that FedEx had [the package] in hand" on September 4.[5]

Whether a given set of facts meets the standard for equitable tolling, however, is a legal question. See Niehoff v.

---

[4] We also note that under the regulations currently in effect, the BIA may not "engage in factfinding in the course of deciding cases," and the term "cases" includes motions to reconsider. 8 C.F.R. § 1003.1(d)(3)(iv); see also Efficient Case and Docket Management in Immigration Proceedings, 89 Fed. Reg. 46742, 46742, 46787 (May 29, 2024) (effective on July 29, 2024). One federal appellate court has suggested, without squarely deciding, that the BIA may engage in factfinding for the limited purpose of deciding equitable-tolling requests. See Williams v. Garland, 59 F.4th 620, 639 (4th Cir. 2023) (reviewing for substantial evidence a finding of fact by the BIA underlying its equitable-tolling determination). Because no agency factfinding is at issue in this case, we offer no view on the extent of the BIA's factfinding authority in deciding motions requesting equitable tolling.

[5] The government has never contended that FedEx's Saturday pick-up service was not operational on September 4, 2021.

Maynard, 299 F.3d 41, 47 (1st Cir. 2002) (reviewing equitable tolling decisions de novo where the decision on review does not "hinge[] on factual determinations"); see also Williams v. Garland, 59 F.4th 620, 639 (4th Cir. 2023) (calling this kind of question "legal work" and applying de novo review (quoting Google LLC v. Oracle Am., Inc., 593 U.S. 1, 24 (2021))). Indeed, the United States Supreme Court has held that whether equitable tolling is warranted on a particular set of "undisputed or established" facts constitutes a "question of law" permitting federal court jurisdiction (and thus federal court review of a BIA decision) under 8 U.S.C. § 1252(a)(2)(D). Guerrero-Lasprilla v. Barr, 589 U.S. 221, 228 (2020). Of course, in so holding, the Supreme Court necessarily determined that such equitable-tolling questions are questions of law on the merits. See Nkomo v. Att'y Gen. of the U.S., 986 F.3d 268, 272 (3rd Cir. 2021) (citing to Guerrero-Lasprilla's holding as authority for de novo review of the BIA's denial of equitable tolling). Thus, we review de novo the BIA's conclusion that the record facts here, if assumed to be true, were not enough to warrant equitable tolling. See Radkov v. Ashcroft, 375 F.3d 96, 98 (1st Cir. 2004); see also Williams, 59 F.4th at 633 (explaining that "courts must separate out the subsidiary factual or legal or mixed factual and legal determinations to understand why the Board denied the motion" and then "apply the usual standards," including "de novo for law" (citing

Guerrero-Lasprilla, 589 U.S. at 228)).  And "[i]n the immigration context, as elsewhere, an error of law on the [agency's] part [amounts to] an abuse of discretion."  Radkov, 375 F.3d at 98 (citing Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 221 (1st Cir. 2003)).

Finally, "[u]nder well-settled principles of administrative law, we must accept or reject the agency's decision based on the rationale the agency provides."  James, 16 F.4th at 326 (quoting Bolieiro v. Holder, 731 F.3d 32, 38 (1st Cir. 2013)).  We review any rationale that "may reasonably be discerned" from the agency's decision.  Garland v. Ming Dai, 593 U.S. 357, 369 (2021) (quoting Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974)).

### III. DISCUSSION

Diaz argues that the BIA committed legal error, and therefore abused its discretion, when it determined that the record evidence was insufficient to establish equitable tolling.  She also argues, alternatively, that the BIA acted arbitrarily and capriciously by failing to apply a "mailbox rule" for the filing of her paper documents.[6]  We agree with Diaz on her first point and thus do not reach her second argument.

---

[6] Diaz's arbitrary and capricious claim focuses on the BIA's different treatment of cases filed on or after February 11, 2022, which can benefit from the BIA's new electronic filing process

- 12 -

The BIA recently issued a precedential opinion deciding for the first time that its thirty-day appeal deadline is subject to "an important exception" for "equitable tolling." Matter of Morales-Morales, 28 I. & N. Dec. 714, 716 (BIA 2023). Equitable tolling became available after the BIA held, in Morales-Morales, that the appeal deadline is a claims-processing rule, not a jurisdictional one. Id. at 716 (overruling Matter of Liadov, 23 I. & N. Dec. 990 (BIA 2006)).

In deciding whether to toll the thirty-day appeal deadline, the BIA applies the two-part test set out in Holland v. Florida, 560 U.S. 631 (2010). See Morales-Morales, 28 I. & N. Dec. at 717. To satisfy that test, a party seeking equitable tolling must establish that she "has been pursuing [her] rights diligently" and that an "extraordinary circumstance" nevertheless "prevented timely filing." Id. (citing Holland, 560 U.S. at 649). The burden is on the party requesting equitable tolling to "clearly establish" both diligence and extraordinary circumstances. Id.; cf. Gyamfi v. Whitaker, 913 F.3d 168, 174 (1st Cir. 2019) (explaining, in habeas context, that burden rests with "the party seeking to toll the deadline" (citing Neves v. Holder, 613 F.3d

_____

permitting same-day filing of legal documents, and cases filed before February 11, 2022, which continue to be subject to the previous paper-filing requirements. See Executive Office for Immigration Review Electronic Case Access and Filing, 86 Fed. Reg. 70708, 70708 (Dec. 13, 2021).

30, 36 (1st Cir. 2010))).  A party who makes the requisite showing on both prongs is "_entitled_ to equitable tolling."  James, 16 F.4th at 325-26 (quoting Holland, 560 U.S. at 649); see also Morales-Morales, 28 I. & N. Dec. at 717 ("The Board _will_ accept late-filed appeals where a party can establish equitable tolling applies." (emphasis added)).

Further, because the BIA in Morales-Morales explicitly imported the equitable-tolling rule from Holland into agency practice, we assume without deciding that the agency's standard and the judicial standard for equitable tolling are one and the same.  See Morales-Morales, 28 I. & N. Dec. at 717 ("[W]e will apply the equitable tolling rule from Holland . . . .").  Thus, we rely on federal court decisions applying the Holland standard, as we have not been able to identify a single decision after Morales-Morales, published or unpublished, in which the BIA equitably tolled the thirty-day appeal deadline.[7]

## A.  Diligence

We begin with diligence.  The BIA determined that the evidence in the record was insufficient to establish that Diaz had been pursuing her rights diligently.  In our view, that conclusion was legally incorrect for two reasons.  First, the BIA applied the wrong legal standard in evaluating the evidence before it when it

---

[7] Our search included a review of all commercially available databases.

brushed aside counsel's unrebutted representation about when a legal document was mailed. Second, the BIA overlooked other documentary evidence that supported counsel's representation. We thus vacate the BIA's insufficiency holding and remand to the BIA to reevaluate Diaz's diligence showing under the correct legal standard.

The diligence prong serves to filter out cases in which "a litigant was responsible for [her] own delay." Menominee Indian Tribe of Wisc. v. United States, 577 U.S. 250, 257 (2016). To establish diligence, Diaz need not show that she acted with "maximum feasible diligence." Holland, 560 U.S. at 653 (quotation marks and citation omitted). Thus, she does not need to demonstrate that she "left no stone unturned." Ramos-Martinez v. United States, 638 F.3d 315, 324 (1st Cir. 2011) (citing Baldayaque v. United States, 338 F.3d 145, 153 (2d Cir. 2003)). Instead, she "must show that [s]he has exercised 'reasonable diligence' to protect [her] own interests." Id. at 323-24 (quoting Holland, 560 U.S. at 653).

The BIA ruled against Diaz on diligence because it concluded that there was "insufficient evidence" in the record that Diaz "delivered the appeal to Federal Express on the claimed date" -- September 4, 2021. In so ruling, the BIA determined that the representation by Diaz's counsel that "[o]n September 4, 2021, [he] sent the Notice of Appeal to the BIA through FedEx via

- 15 -

overnight delivery service" was legally insufficient.  The BIA's decision also made no mention of the documents in the record that supported counsel's representation, including the FedEx label and the "Deliver Weekday, Saturday Pickup" instructions in the FedEx Tracker.

The government attempts to shore up the BIA's conclusion that this evidence was insufficient.  It argues that the record lacked information showing "where and when" Diaz "tendered the package to FedEx," whether Diaz tendered the Notice of Appeal "to FedEx at a time prior to final overnight delivery," or whether FedEx "indicated that the document would be mailed overnight on September 4, 2021."  The government also casts doubt on the probative value of the shipping label, arguing that it is "just" a "print-out from FedEx submitted with the [Notice of Appeal]"[8] that "simply indicates that a mailing label was created on September 4, 2021."

We are unconvinced.  In our view, the government's claim that there was insufficient evidence to show that counsel "delivered the appeal to Federal Express" on September 4 rests on either speculation or a strained interpretation of counsel's representation to the BIA.  It repeats the agency's legal error of

---

[8] We take judicial notice of the fact that many law firms and governmental organizations have their own FedEx accounts and thus generate their own FedEx labels, which are also printouts.

brushing aside the representation of Diaz's counsel. And it fails to address that the agency overlooked other evidence, namely the instructions in the Special Handling Section of the FedEx Tracker and the FedEx label, for no obvious reason.

Importantly, an attorney's representation to a court that they sent a filing on a certain date is generally accepted as sufficient to establish the date of mailing. Courts around the country routinely rely on such representations. See, e.g., United States v. Rainey, 605 F.3d 581, 583 (8th Cir. 2010) (relying on certification of service to establish the fact of mailing); Greene v. WCI Holdings Corp., 136 F.3d 313, 315 (2d Cir. 1998) (affirming the district court's reliance on an affidavit of service stating that an envelope had been placed in a mailbox on a particular date); United States v. Kennedy, 133 F.3d 53, 60 (D.C. Cir. 1998) (reasoning, in a case where mailing was never received, that "timely filing" of a statement of service "supports an inference of regularity"); see also United States v. Wright, 238 F.3d 418 (4th Cir. 2000) (unpublished) (per curiam) (holding that a "presumption that the information actually was mailed attaches to [a] valid certificate of service" (citing Timmons v. United States, 194 F.2d 357, 361 (4th Cir. 1952))).

We see no reason why Diaz's counsel's representation should be treated any differently. Like any member of the bar appearing before a federal court or federal agency, Diaz's counsel

was obligated to tell the truth in his representations to the BIA. Further, by filing his Notice of Entry of Appearance, Diaz's counsel promised the BIA that he would "comply with the EOIR Rules of Professional Conduct in 8 C.F.R. § 1003.102." That section subjects him to sanctions if he "[k]nowingly or with reckless disregard makes a false statement of material fact or law, or willfully misleads, misinforms . . . , or deceives any person . . . , concerning any material and relevant matter relating to a case, including knowingly or with reckless disregard offering false evidence." 8 C.F.R. § 1003.102(c).[9]

The commonsense meaning of counsel's representation that "[o]n September 4, 2021, [he] sent the Notice of Appeal to the BIA through FedEx via overnight delivery service" is that counsel actually delivered the package to FedEx on that date so that it could be mailed on that date. Otherwise, counsel's statement that he "sent" the appeal "to the BIA" "on September 4" would be untrue or at least misleading, particularly in the context of a motion requesting tolling of the appeal deadline. Thus, unless the government is simply discrediting the statement of Diaz's counsel,

---

[9] That section also prohibits false certification, frivolity, undue delay, and other attorney misconduct in immigration proceedings. See id. § 1003.102(i)-(j), (q). Those explicit grounds for sanctions, as well as other applicable rules and obligations governing attorney conduct, should serve to prevent abuse by attorneys who are seeking to establish the factual basis for equitable tolling.

the statement is important record evidence supporting equitable tolling.

What's more, the BIA did not discuss in its decision either the FedEx label or the "Saturday Pickup" instructions in the FedEx Tracker, which backed up the representation by Diaz's counsel. That, too, was legal error. The BIA "cannot turn a blind eye to salient facts," Sihotang v. Sessions, 900 F.3d 46, 51 (1st Cir. 2018), and its failure to mention the label or "Saturday Pickup" instructions "strongly suggests it 'completely overlooked critical evidence,'" Aguilar-Escoto v. Garland, 59 F.4th 510, 516-17 (1st Cir. 2023) (quoting Sihotang, 900 F.3d at 51). The government, for its part, also overlooks the instructions. Instead, it argues that the FedEx Tracker, which states that the package was shipped on September 7 and delivered on September 8, contradicted counsel's statements.

Again, we disagree with the government. The fact that FedEx shipped the package on September 7 was not disputed; rather, it was the entire point of the motion to reconsider. Diaz's counsel requested equitable tolling because, he represented, FedEx failed to ship the Notice of Appeal on time. To be sure, it was Diaz's burden to clearly establish that she was entitled to equitable tolling based on all the evidence, including the background understanding that FedEx generally meets its delivery guarantees. And the government would have an argument that the

- 19 -

other evidence in the record was contradictory if, for example, the FedEx label had indicated that it was created at 10 p.m. on September 4, 2021, a time so late that delivery of the package to FedEx on that day would appear highly improbable. But here the label indicates that it was created before the close of business, at 3:42 p.m.

For all these reasons, the BIA's conclusion that there was insufficient evidence to establish a September 4 mailing was based on legal error. The agency impermissibly disregarded the representation of Diaz's counsel and failed to consider other evidence supporting that representation. The government fails to point to any case law or other legal authority (or anything in the BIA's practice guidelines) indicating that the type of evidence submitted here is insufficient to establish the basic fact that Diaz tendered her appeal package to FedEx on September 4. Accordingly, we vacate the BIA's insufficiency holding, see Radkov, 375 F.3d at 98, and remand to the BIA to evaluate under the appropriate legal standard whether the record evidence here satisfies the reasonable-diligence test.[10]

---

[10] We also note, and the government agrees, that Diaz "own[ed] the thirty days" to decide whether she wanted to appeal and to file her appeal paperwork, and "all [those days] [were] likely to be essential." Irigoyen-Briones v. Holder, 644 F.3d 943, 950 (9th Cir. 2011).

## B.    Extraordinary Circumstances

Even if Diaz were reasonably diligent in pursuing her rights, she also must show "that some extraordinary circumstance prevented timely filing" to establish that she is entitled to equitable tolling. Morales-Morales, 28 I. & N. Dec. at 717 (citing Holland, 560 U.S. at 649).  We hold that the BIA abused its discretion by inexplicably departing from its own binding precedent in Morales-Morales in evaluating whether extraordinary circumstances existed here.

A party can satisfy the extraordinary-circumstances requirement by showing that "reasonable expectations about an event's occurrence [were] interrupted," Morales-Morales, 28 I. & N. Dec. at 717, and that the interruption was both "extraordinary" and "beyond [the party's] control," Menominee Indian Tribe, 577 U.S. at 257.  "'[G]arden variety claim[s] of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline," are not enough. Holland, 560 U.S. at 651-52 (first quoting Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 96 (1990); and then quoting Lawrence v. Florida, 549 U.S. 327, 336 (2007)).

According to the BIA, "[o]ne example" of extraordinary circumstances "is where a party uses a guaranteed delivery service, and the service fails to fulfill its guarantee." Morales-Morales, 28 I. & N. Dec. at 717.  But despite Diaz's claim that this is

exactly what happened here, the BIA held that Diaz did not satisfy the extraordinary-circumstances prong. Specifically, the BIA concluded that Diaz's "contention that the federal holiday [was] an exceptional circumstance . . . [was] unpersuasive because the holiday [was] not an unexpected event." It also stated that Diaz's "reliance on a courier service" was an "insufficient reason to grant the respondent's motion."

But the thrust of Diaz's motion -- that FedEx had delivered her filing one day later than expected -- was clear. Diaz explained that she sent the Notice of Appeal to the BIA on September 4, 2021, using FedEx's next-day delivery service, meaning that FedEx was supposed to deliver the package on September 7, 2021, the next business day, but failed to do so. The BIA's apparent conclusion that Diaz was arguing that the holiday itself was an extraordinary circumstance is not supported by the record.

Instead, Diaz claimed that she "use[d] a guaranteed delivery service, and the service fail[ed] to fulfill its guarantee." Morales-Morales, 28 I. & N. Dec. at 717. Although the BIA cited to Morales-Morales, it did not apply the reasoning of that decision to Diaz's case. See 8 C.F.R. § 1003.1(g)(1)-(2) (indicating that published BIA decisions are "binding" and will "serve as precedents in all proceedings involving the same issue or issues"). Nor did the BIA offer any explanation as to why its discussion in Morales-Morales, seemingly squarely on point here,

would not compel a favorable outcome for Diaz. See Lafortune v. Garland, 110 F.4th 426, 434 (1st Cir. 2024) (holding that an agency is "expected to apply the same basic rules to all similarly situated applicants" unless it explains why its departure is reasonable (quotation marks and citation omitted)). We therefore conclude that the BIA's extraordinary circumstances holding amounted to an abuse of discretion by "inexplicably depart[ing]" from "its own precedent[]." Adeyanju v. Garland, 27 F.4th 25, 51 (1st Cir. 2022). And we remand to the BIA to reconsider the application of the extraordinary-circumstances test, as articulated in Morales-Morales, to Diaz's case.

## IV. CONCLUSION

We **grant** Diaz's petition for review. Applying the ordinary remand rule, see INS v. Ventura, 537 U.S. 12, 16-17 (2002) (per curiam), we **vacate** the denial of Diaz's motion to reconsider and **remand** to the BIA for further proceedings consistent with this opinion. Finally, we deny Diaz's motion to take judicial notice of publicly available facts about FedEx's business hours as unnecessary to the resolution of this appeal.