# United States Court of Appeals
## For the First Circuit

No. 24-1511

IGOR LEANDRO RAMOS GONCALVES,

Petitioner,

v.

PAMELA J. BONDI,[*]
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Rikelman, Howard, and Aframe,
Circuit Judges.

Sierra J. Perez-Sparks, with whom David Zimmer was on brief, for petitioner.

Christopher Ian Pryby, Trial Attorney, Office of Immigration Litigation, Civil Division, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, Office of Immigration Litigation, Civil Division, and Anthony C. Payne, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Pamela J. Bondi is automatically substituted for former Attorney General Merrick B. Garland as respondent.

May 20, 2025

**AFRAME**, **Circuit Judge**.  Igor Quinn-Goncalves, an undocumented native and citizen of Brazil, brings this petition for review of an April 17, 2024 decision of the Board of Immigration Appeals ("BIA") denying his appeal of an immigration judge's order that he be removed from the United States.[1]  The petition was not timely filed in this Court and therefore is dismissed.

Quinn-Goncalves, who has been detained at all relevant times, acknowledges that his petition was untimely because it arrived at the clerk's office on May 20, 2024 -- three days after the last day on which it could have been timely filed.[2]  See 8 U.S.C. § 1252(b)(1) (requiring that petitions for review "be filed not later than 30 days after the date of the final order of removal"); Fed. R. App. P. 15(a)(1) ("Review of an agency order is commenced by filing, within the time prescribed by law, a petition for review with the clerk of a court of appeals authorized to review the agency order."); id. 25(a)(2)(A)(i) ("[F]iling [of a

---

[1]     Although the petitioner submitted his petition under the name Igor Leandro Ramos Goncalves, he changed his name to Igor Quinn-Goncalves after marrying Kerry Quinn-Goncalves.  We use the petitioner's married name.

[2]     Kerry Quinn-Goncalves sent the petition through the United Parcel Service ("UPS") on May 17, 2024 -- the last day on which it could be timely filed.  She contends that she did so after phoning the clerk's office on that date and being incorrectly advised that placing the petition in the mail by the deadline was sufficient to make the petition timely.

petition for review] may be accomplished by mail addressed to the clerk, but filing is not timely unless the clerk receives the [petition] within the time fixed for filing."). He also recognizes that this Court may not extend the time for filing a petition for review. See Fed. R. App. P. 26(b)(2) (stating that, while an appeals court generally may extend time deadlines "[f]or good cause," it "may not extend the time to file," inter alia, a petition for review of a decision of an administrative board); see also id. 2(a) ("[A] court of appeals may -- to expedite its decision or for other good cause -- suspend any provision of these rules in a particular case and order proceedings as it directs, except as otherwise provided in Rule 26(b)."). He nevertheless contends that we may address the merits of his petition through a post hoc extension of time for the clerk to receive the petition, and that good cause exists for us to do so.

Quinn-Goncalves's principal argument builds from the premise that, under section 1252(b)(1), Rule 25(a)(2)(A)(i), and Rule 26(b)(2), a petition for review placed in the mail within thirty days of the final order of removal, as his petition was, is filed upon mailing. Proceeding from there, Quinn-Goncalves argues that, while Rule 25(a)(2)(A)(i) also establishes a separate and distinct timely "receipt" requirement -- a requirement that he acknowledges he did not satisfy -- Rule 26(b)(2)'s prohibition on "extend[ing] the time to file" a petition for review applies only

to the _filing_ of the petition, and not to its receipt by the clerk. Thus, the argument runs, Rule 26(b)'s prohibition on an extension of time "to file" a petition for review does not preclude a court from, for good cause, extending the time for _receipt_ of the filing.

The government disputes Quinn-Goncalves's premise that, in the context of nonelectronic filing under Rule 25(a)(2)(A)(i), mailing the petition constitutes filing the petition. According to the government, the act of filing is not complete in this context until the clerk receives the petition. Here, because the clerk received the petition three days after the statutory filing deadline, the government argues that it was not timely filed. And Rule 26(b)(2), the government says, bars this Court from addressing the merits of a petition for review that was not timely filed.

We assume arguendo two elements of Quinn-Goncalves's case that are contested by the government. First, we assume that Rule 25(a)(2)(A)(i) governs this case even though Quinn-Goncalves's wife sent the petition by UPS rather than by depositing it in the U.S. mail. _See_ _supra_, note 2. Second, we assume that Quinn-Goncalves could establish good cause under Rules 2(a) and 26(b) for the clerk's untimely receipt of his petition. Even so, we conclude that a petition for review mailed but not timely received within the time fixed for filing falls within Rule 26(b)(2)'s prohibition on the Court granting time extensions.

Quinn-Goncalves's argument in support of reading the word "filed" in section 1252(b)(1) to refer only to mailing a petition for review, and not its receipt, begins from an analogy he draws to the Supreme Court's reasoning in Houston v. Lack, 487 U.S. 266 (1988). There, a state prisoner proceeding pro se timely "deposited" with prison authorities a notice of appeal from the denial of his federal habeas petition. Id. at 268. But the notice, which prison authorities then mailed, did not arrive at the appropriate district court clerk's office until after the expiration of the applicable statutory deadline. See id. at 268-69. Emphasizing the obstacles to timely filing faced by unrepresented prisoners, the Court held that the prisoner's notice was "filed" within the meaning of the applicable procedural provisions when the prisoner deposited the notice with prison authorities for mailing. See id. at 269-76.[3]

---

[3] The procedural provisions applicable in Houston included 28 U.S.C. § 2107 and Rules 3(a) and 4(a)(1). See 487 U.S. at 272. Like 8 U.S.C. § 1252(b)(1), the then-extant version of section 2107 set forth a thirty-day time limit but neither "define[d] when a notice of appeal has been 'filed' [n]or designate[d] the person with whom it must be filed . . . ." Id. And the then-extant versions of Rules 3(a) and 4(a)(1) "[were] not dispositive" of when "filing" occurs as a textual matter. Id. at 273.

Subsequently, in 1993, Rule 25 was amended to memorialize Houston's holding and extend it "to all papers filed in the courts of appeals by persons confined in institutions." Fed. R. App. P. 25 advisory committee's note to 1993 amendment. In relevant part, Rule 25(a)(2)(A)(iii) states:

There are some similarities between the statute interpreted in Houston, 28 U.S.C. § 2107, and section 1252(b)(1). As just observed, neither statute provided a definition of the steps required for filing a paper. See supra, note 3. Moreover, Houston adopted a "mailbox rule" even though, as in this case, neither of the applicable Rules of Appellate Procedure clearly required it to do so. See Houston, 487 U.S. at 274; Fed. R. App. P. 3(a), 4(a)(1).[4] But on balance, Houston undermines, rather than supports, Quinn-Goncalves's argument.

First, Houston emphasized that its ruling was informed by the "unique" constraints faced by pro se prisoners. Houston,

---

**Inmate Filing.** If an institution has a system designed for legal mail, an inmate confined there must use that system to receive the benefit of this [Rule]. A paper not filed electronically by an inmate is timely if it is deposited in the institution's internal mail system on or before the last day for filing . . . .

[4]    Contrast the relationship between the Supreme Court certiorari statute, 28 U.S.C. § 2101 -- which specifies the deadlines for, inter alia, filing a petition for a writ of certiorari without defining when filing occurs -- and Supreme Court Rule 29.2, which quite clearly adopts a mailbox rule:

A document is timely filed if it is . . . sent to the Clerk through the United States Postal Service by first-class mail (including express or priority mail), postage prepaid, and bears a postmark, other than a commercial postage meter label, showing that the document was mailed on or before the last day for filing . . . .

487 U.S. at 272.[5]  Quinn-Goncalves did not face all of these constraints.  Critically, he was not in the position of having 'no choice but to entrust the forwarding of his [papers] to prison authorities . . . .'"  Id.  His wife sent his petition to the Court on his behalf, and he also concedes that he had access to but did not use an electronic filing system of the type now authorized by Rule 25(a)(2)(A)(iii), which did not exist when Houston was decided.  See supra, note 3.

Second, Houston stated that it was not disturbing the general rule in civil appeals, confirmed by "a large body of lower court authority," that receipt by the court is ordinarily a necessary filing element.  487 U.S. at 274 (collecting illustrative cases).  In other words, Houston carefully limited its adoption of the mailbox rule to the specific situation presented in that case

---

5    Houston identified the following constraints as relevant to its conclusion: (1) "pro se prisoners cannot personally travel to the courthouse to see that the [paper] is stamped 'filed' or to establish the date on which the court received the notice"; (2) pro se prisoners are disadvantaged compared with other litigants in that only they are forced to "entrust their [papers] to the vagaries of the mail and the clerk's process for stamping incoming papers"; (3) pro se prisoners cannot "place the [paper] directly into the hands of the United States Postal Service (or a private express carrier)" or "call[] the court" to confirm that it has been "received and stamped, knowing that if the mail goes awry they can personally deliver [the paper] at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the [paper] was not stamped on the date the court received it"; and (4) pro se prisoners have "no choice but to entrust the forwarding of [their papers] to prison authorities whom [they] cannot control or supervise and who may have every incentive to delay."  487 U.S. at 271.

which, as we have just said, is quite different from the situation here.

Third, Houston observed that the administrative concerns frequently cited in support of the general rule that filing is fully accomplished only upon receipt -- namely, that adoption of a mailbox rule "would increase disputes and uncertainty over when a filing occurred" and "would put all the evidence about the date of filing in the hands of one party" -- do not apply to a pro se prisoner. Id. at 275. A pro se prisoner "does not anonymously drop his [paper] in a public mailbox," but rather "hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date." Id. But these administrative concerns do militate against the use of a mailbox rule to assess the timeliness of a filing by one who simply drops a petition for review in a publicly accessible mailbox. See Fed. R. App. P. 25(a)(2)(A)(i).[6]

---

[6] We recognize that Kerry Quinn-Goncalves's use of UPS to send the petition to the clerk's office made it unlikely that any controversy would arise about the date on which she sent the petition. See supra, note 2. But Quinn-Goncalves asks us to treat his case as if he had "accomplished" his filing "by mail" within the meaning of Rule 25(a)(2)(A)(i). We do so for the sake of argument and thus analyze the case as if it in fact involved a mailbox mailing which would raise the concerns described above.

- 9 -

For these reasons, we reject Quinn-Goncalves's argument that, under the reasoning of <u>Houston</u>, we should read section 1252(b)(1) to treat a petition for review as filed when mailed. In this situation, the general rule should apply.

In addition to relying on <u>Houston</u>, Quinn-Goncalves makes an independent argument that Rule 25(a)(2)(A)(i) provides that timely filing occurs upon mailing the petition within the statutory deadline. He contends that the Rule's statement that "filing may be accomplished by mail" must be read to mean that the filing is <u>complete</u> upon mailing, and that the subsequent provision of the Rule stating that the "filing is not timely unless the clerk receives the paper within the time fixed for filing" simply adds an additional, waivable, timely-receipt requirement. He also suggests that a contrary reading would render the Rule's timely-receipt language superfluous and that a comparison of the text of Rule 25(a)(2)(A)(i) with that of Rule 25(a)(2)(A)(ii) and (iii) reinforces his contention that filing is completed upon mailing under all three subsections.[7] Again, we disagree.

---

[7] Quinn-Goncalves says that if, as a general matter, filing is not complete until a paper is received by the clerk, then there would be no need to include language specifying a timely receipt requirement. But the very fact that we are relying on a "general rule" concerning the completion of filing in the context of mailed papers makes clear that there also are exceptions. To see that this is so, one need look no further than Rule 25(a)(2)(A)(ii), which specifies that, notwithstanding the provisions of Rule 25(a)(2)(a)(i) requiring timely receipt by the

The better reading of the Rule, we believe, starts with recognizing that section (a)(2)'s heading -- **"Filing: Method and Timeliness"** -- suggests that both method and timeliness are elements of an effective "filing." See Fed. R. App. P. 25(a)(2). The remainder of the section then provides details about both elements in various filing scenarios. Under this reading, the statement that "filing may be accomplished by mail addressed to the clerk" in Rule 25(a)(2)(A)(i) is not a statement about how filing is to be completed; it is, rather, an affirmation that a mailing to the clerk is a permissible method of nonelectronic filing. And the immediately subsequent statement that a "filing [by mail] is not timely unless the clerk receives the papers within the time fixed for filing" is a necessary clarification about how the timeliness of a mailed filing will be judged. Such a clarification is necessary because, unlike an electronic or hand-delivered submission, the clerk will not receive a mailed filing simultaneously with its being submitted. Rules 25(a)(2)(A)(ii) and (iii) then carve out, respectively, mailbox-rule exceptions to the generally applicable timeliness requirement for briefs,

---

clerk for most papers, "[a] brief or appendix not filed electronically is timely filed" if "on or before the last day for filing, it is . . . mailed to the clerk . . . or dispatched to a third-party commercial carrier for delivery to the clerk within 3 days." Thus, rather than being surplusage, the timely-receipt language in Rule 25(a)(2)(i) serves to clarify that the mailbox rule adopted in Rule 25(a)(2)(A)(ii) for briefs and appendices does not apply to other papers.

appendices, see supra, note 7, and inmate filings, see supra, note 3, that are not filed electronically. And Rule 25(a)(4) reinforces that filing generally occurs upon receipt by the clerk. See id. ("The clerk must not refuse to accept for filing any paper presented for that purpose solely because it is not presented in proper form as required by these rules or any local rule or practice." (emphasis added)).[8]

The understanding that the elements of an effective filing include both a permissible method and a standard for judging timeliness also leads to a more even-handed and administrable operation of Rule 26(b)'s prohibition on granting good-cause extensions of the time to file petitions for review. Quinn-Goncalves's proposed use of a mailbox rule to differentiate petitioners who are eligible to seek a good-cause time extension from those facing a time-bar runs counter to the unqualified language of Rule 26(b), which uniformly bars untimely petitions. We see no reason to introduce a disparity into the operation of a rule whose text does not contemplate it. Moreover, Quinn-Goncalves's proposal (1) would likely increase uncertainty and thus disputes over when a "filing" has occurred, and (2) would put all of the evidence about the date of filing in the hands of

---

[8] As the government points out, the words "for filing" would be superfluous if the filing was complete upon mailing, for the mailed paper already would have been filed.

one party. Both factors counsel in favor of treating timely receipt as an element of filing under Rule 25(a)(2)(A)(i). See Houston, 487 U.S. at 275 (elaborating why the timeliness of the filing of a mailed paper is usually based on when it is received by the clerk and not when it is mailed).

Although Quinn-Goncalves mailed his petition before the expiration of the statutory deadline for filing his petition for review, he failed to ensure that the clerk received it by that deadline. Quinn-Goncalves therefore failed to timely file his petition, see, e.g., Chao Lin v. U.S. Att'y Gen., 677 F.3d 1043, 1044-46 (11th Cir. 2012) (petition untimely when sent by third-party courier before deadline but not received until after deadline); Navarro-Miranda v. Ashcroft, 330 F.3d 672, 676 (5th Cir. 2003) (similar, involving mailed petition); Sankarapillai v. Ashcroft, 330 F.3d 1004, 1005-06 (7th Cir. 2003) (similar, involving petition mailed on the deadline); is barred by Rule 26(b) from obtaining a post hoc extension of time for filing;[9] and has presented no other developed argument for avoiding the prohibition set forth in Rule 26(b).[10] Accordingly, we **dismiss** the petition.

_____

[9]    Cf. Diaz-Valdez v. Garland, 122 F.4th 436 (1st Cir. 2024) (remanding to the agency to apply the correct legal standard in addressing a request for equitable tolling, based on the BIA's own precedent, construing the BIA's regulation setting out a thirty-day appeal deadline).

[10]    Quinn-Goncalves does present an alternative request that we treat his filing as a timely inmate filing under

Rule 25(a)(2)(A)(iii), see supra, note 3, and excuse for good cause his failure to deposit it in his institution's internal mail system.   But Rule 25(a)(2)(A)(iii), by its terms, precludes us from doing so.   See id. ("If an institution has a system designed for legal mail, an inmate confined there must use that system to receive the benefit of this Rule . . . .") (emphasis added).