# United States Court of Appeals
## For the First Circuit

No. 22-1780

LILIAN EUGENIA VARELA-CHAVARRIA,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Kayatta, Howard, and Rikelman,
<u>Circuit Judges</u>.

<u>Denise Acevedo Perez</u> for petitioner.
<u>Allison Frayer</u>, with whom <u>Shannon J. Murphy</u>, United
States Department of Justice, Office of Immigration Litigation,
<u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General,
Civil Division, and <u>Jennifer Levings</u>, Assistant Director, were on
brief, for respondent.

November 9, 2023

**RIKELMAN**, <u>Circuit Judge</u>.  After the Board of Immigration Appeals ("BIA") affirmed the Immigration Judge's ("IJ") denial of her application for asylum and withholding of removal, Lilian Eugenia Varela-Chavarria filed a petition for review.  She makes two arguments in her petition.  First, she argues that the BIA's failure to address a procedural error in her hearing before the IJ violated her right to due process under the Fifth Amendment.  Second, she contends that the BIA erred by concluding that she had not established past persecution or a well-founded fear of future persecution on account of a statutorily protected ground.  Because Varela-Chavarria failed to raise her first argument to the BIA, we are precluded from addressing it now.  And although we agree with Varela-Chavarria that the BIA erred by failing to evaluate the severity of her mistreatment as a teenager through the eyes of a child, we conclude that we still must reject her second argument because she failed to establish a connection between her mistreatment and any protected ground.  Accordingly, we deny the petition.

## I. BACKGROUND

Varela-Chavarria, now twenty-nine years old, came to the United States from El Salvador in 2013.  She entered the country without inspection through Hidalgo, Texas, where the Department of Homeland Security charged her as removable under the Immigration and Nationality Act and served her with a Notice to Appear.

Varela-Chavarria appeared before an IJ in Texas and conceded removability. She then requested that her removal proceedings be transferred to the immigration court in Boston, Massachusetts.

In Boston, Varela-Chavarria submitted an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The IJ informed her that the application was unsatisfactory (because it did not explain why she was afraid to return to El Salvador) and gave her additional time to find an attorney to assist her with revising it. Varela-Chavarria filed an amended application on September 9, 2015, in which she indicated that she sought asylum based on her "political opinion" and "membership in a particular social group." However, she did not identify the social group.

In an affidavit filed in support of her application, Varela-Chavarria explained that she was afraid to return to El Salvador because of pervasive gang violence. She recounted how gangs controlled many areas of the country and "obliged people to pay a tax, demanding that you pay them a monthly fee for 'protection.'" As a teenager, Varela-Chavarria had experienced the effects of this extortion firsthand. In El Salvador, she lived with her mother, Tomasa, and two brothers. Tomasa worked outside the home so the family could survive economically. Gangs began to request a "tax" from Tomasa, which they called a fee for the "protection" of her children. By the time Varela-Chavarria was

- 3 -

around fourteen years old, gang members were directly threatening her to motivate Tomasa to pay the tax.[1]  When Varela-Chavarria would walk to and from school with her younger brother, gang members -- sometimes as many as six -- threatened to sexually abuse her and otherwise hurt her if her mother refused to pay the tax. They also pressured Varela-Chavarria's brother to join the gang by threatening to rape her if he did not.  These threats continued "month after month," until Varela-Chavarria eventually left for the United States at the age of nineteen.

The IJ held a hearing on the merits of Varela-Chavarria's asylum application on May 30, 2019, at which Varela-Chavarria was represented by counsel.  Her testimony added further color to her affidavit.  Varela-Chavarria explained that Tomasa owned a small bakery with her siblings.  Gang members extorted Tomasa, and not her siblings, because Tomasa was "the one in charge of the bakery." They pressured Tomasa into paying by telling her they "could do to [Varela-Chavarria] whatever they wanted to."  Gang members repeated these rape threats to Varela-Chavarria herself. Fortunately, the threats never escalated to physical violence for Varela-Chavarria or anyone in her family.  Although her older brother was beaten up by a group of people at some point, Varela-

---

[1]  The precise age at which the gang's abuse of Varela-Chavarria began is unclear.  Varela-Chavarria "began to feel fear of the[] gang members" when she was "about 12," but the direct threats may not have started until she was fourteen or fifteen.

Chavarria testified that her brother was unable to see the perpetrators, and thus he could not say whether the incident was related to the gang's threats.

At the conclusion of Varela-Chavarria's testimony, the IJ issued an oral decision denying the asylum application. The IJ held that Varela-Chavarria had failed to establish past persecution because the mistreatment she suffered was verbal, not physical, and therefore was insufficient to constitute persecution. The IJ also explained that Varela-Chavarria had failed to prove a well-founded fear of future persecution on account of a protected ground because, although she had indicated in her written application that she sought asylum based on her political opinion and membership in a particular social group, she had neither "advanced a claim as to being in any particular social group . . . [nor] demonstrated or expressed any particular political opinion."

The BIA affirmed the IJ's decision on appeal. Relying on our case law establishing that threats alone rarely constitute persecution, it agreed with the IJ that Varela-Chavarria "did not relate any harm rising to the level of past persecution." Although Varela-Chavarria argued to the BIA that the IJ should have discerned that she was asserting membership in two particular social groups -- "immediate family members of Tomasa" and "women" -- the BIA declined to address these groups because they had not

been raised to the IJ. The BIA also agreed that "the record [did] not indicate that [Varela-Chavarria] and her mother were threatened by gang members outside of the context of a demand for extortion payments."

Varela-Chavarria seeks review of this decision, arguing, first, that the IJ's failure to ensure that the record reflected a clearly delineated particular social group violated her right to due process; second, that the BIA applied the wrong legal standard when it determined that her mistreatment in El Salvador did not amount to persecution; and third, that the record compels the conclusion that she was persecuted on account of a protected ground.[2]

## II. DISCUSSION

### A. Standard of Review

To qualify for asylum, an applicant must establish that she suffered in the past or has a well-founded fear of suffering in the future "persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To carry this burden, the

_____

[2] Varela-Chavarria also argues that the IJ relied on outdated precedent in denying her application, such that the BIA should have remanded to the IJ to consider her application anew. However, neither the IJ nor the BIA cited to any vacated case law, and the BIA expressly relied only on current law in affirming the IJ's decision. Varela-Chavarria does not explain why the BIA nonetheless erred by failing to remand. Accordingly, we reject this argument.

applicant must show that one or more of these five protected grounds "was or will be at least one central reason" for her persecution. Id. § 1158(b)(1)(B)(i). To obtain withholding of removal, the burden is even higher: The applicant "must establish a clear probability that, if returned to [her] homeland, [s]he will be persecuted on account of a statutorily protected ground." Sanchez-Vasquez v. Garland, 994 F.3d 40, 46 (1st Cir. 2021); see also 8 U.S.C. § 1231(b)(3)(A).

When the BIA "adopts and affirms" an IJ's conclusion that an applicant has failed to meet this burden but adds its own gloss, we review both opinions as a unit. Barnica-Lopez v. Garland, 59 F.4th 520, 527 (1st Cir. 2023) (quoting Gómez-Medina v. Barr, 975 F.3d 27, 31 (1st Cir. 2020)); see also Sanchez-Vasquez, 994 F.3d at 46. In doing so, we review legal conclusions de novo and factual findings under the "substantial evidence" standard. Barnica-Lopez, 59 F.4th at 527. Under this standard, we "only disturb the agency's [factual] findings if, in reviewing the record as a whole, 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. (quoting Gómez-Medina, 975 F.3d at 31).

- 7 -

## B. Due Process

We begin with Varela-Chavarria's due process argument. On her application, Varela-Chavarria indicated that she sought asylum based on two enumerated grounds: her political opinion and membership in a particular social group. The IJ rejected the application after finding that Varela-Chavarria did not claim to belong to any particular social group. The BIA then found that Varela-Chavarria's claim to belong to two particular social groups -- "immediate family members of Tomasa" and "women" -- was waived by her failure to raise these groups to the IJ in the first instance. Varela-Chavarria now argues that the IJ's failure to help her clearly delineate these particular social groups during her hearing violated her right to due process under the Fifth Amendment.

The doctrine of administrative exhaustion governs whether we can reach the merits of this argument. Issues "not raised before the BIA may not be raised for the first time on a petition for review." Bernal-Vallejo v. INS, 195 F.3d 56, 64 (1st Cir. 1999); see also 8 U.S.C. § 1252(d)(1). We have recognized one exception to this rule: If the BIA does not "have the power to address the matter as to which exhaustion is claimed," then the petitioner need not raise the issue to the BIA before presenting it to us. Bernal-Vallejo, 195 F.3d at 64. Whether we can address

Varela-Chavarria's due process argument therefore depends upon whether the BIA would have had the power to do so.

Although "[t]he BIA is without jurisdiction to adjudicate purely constitutional issues," it can adjudicate procedural errors in IJ proceedings, even if such errors are characterized as due process concerns. Ravindran v. INS, 976 F.2d 754, 762-63 (1st Cir. 1992). This rule prevents petitioners from obtaining review of "procedural errors in the administrative process that were not raised before the agency merely by alleging that every such error violates due process." Id. at 762 (quoting Reid v. Engen, 765 F.2d 1457, 1461 (9th Cir. 1985)).

Here, Varela-Chavarria raises a due process error of precisely the type the BIA is empowered to address under Ravindran. She argues that the IJ "failed to utilize procedural mechanisms available to ensure [p]etitioner was afforded due process" and that the BIA "could have exercised its . . . authority to remand the case to the IJ with instructions to clarify the record." Accordingly, Varela-Chavarria concedes that the BIA could have remedied the alleged procedural error and does not attempt to frame her argument as implicating "the constitutionality of the statutes, regulations, or formal procedures" governing her underlying hearing -- issues which the BIA would have been powerless to adjudicate. Ravindran, 976 F.2d at 763. We therefore conclude that the BIA had the power to address Varela-Chavarria's

due process argument.  In turn, because Varela-Chavarria failed to raise this due process argument to the BIA, her failure to administratively exhaust the issue prevents us from reaching its merits in a petition for review.[3]

## C. Persecution

In addition to this procedural argument, Varela-Chavarria lodges two substantive objections to the IJ and BIA's conclusion that she did not suffer past persecution on account of a protected ground.  As an initial matter, she argues that the BIA used the wrong legal standard to determine whether her past mistreatment rose to the level of persecution.  On this point, we agree.

Whether past mistreatment is sufficient to constitute persecution depends upon the factual circumstances of each case.  To constitute persecution, "the sum of [a petitioner's] experiences must add up to more than ordinary harassment, mistreatment, or suffering."  Ordonez-Quino v. Holder, 760 F.3d 80, 91 (1st Cir. 2014) (quoting Lopez de Hincapie v. Gonzales, 494 F.3d 213, 217 (1st Cir. 2007)).  Although no exact formula exists for determining whether a petitioner's experiences rise to this

_____

[3] It does not, however, divest us of jurisdiction over the matter.  See Santos-Zacaria v. Garland, 598 U.S. 411, 419 (2023) (holding that 8 U.S.C. § 1252(d)(1) is a "non-jurisdictional rule 'merely prescrib[ing] the method by which the jurisdiction granted the courts by Congress is to be exercised.'" (alteration in original) (quoting Kontrick v. Ryan, 540 U.S. 443, 454 (2004))).

level, we have previously explained that "age can be a critical factor." Id. (quoting Liu v. Ashcroft, 380 F.3d 307, 314 (7th Cir. 2004)). For this reason, when a petitioner's claim is based upon mistreatment that she endured when she was a child, "the fact-finder must look at the events from the child's perspective, and measure the degree of [her] injuries by their impact on a child of [her] age." Id. (cleaned up) (quoting Hernandez-Ortiz v. Gonzales, 496 F.3d 1042, 1046 (9th Cir. 2007)).

Here, Varela-Chavarria was fourteen years old when the gang began to threaten her, but neither the IJ nor BIA acknowledged its obligation to apply the childhood standard, mentioned Varela-Chavarria's age, or explained why the facts described did not amount to persecution under that standard. Thus, the IJ and BIA's conclusion that Varela-Chavarria's harm was insufficient to constitute persecution was infected by legal error.[4]

Although ordinarily we would remand to allow the BIA to evaluate Varela-Chavarria's harm through the proper lens, this course of action is appropriate only if we believe that the error

---

[4] The government all but concedes this point. In its brief, the government does not counter Varela-Chavarria's argument that the IJ and BIA were required to apply the childhood standard yet failed to do so. Instead, it asks us to find that the record does not compel reversal "[e]ven assuming the threats Varela-Chavarria experienced as a teenager, when considered from a child's perspective, rose to the level of past persecution." And at oral argument, the government expressly declined to defend the IJ and BIA's failure to apply the childhood standard.

affected the outcome of her application.  See White v. INS, 17 F.3d 475, 479-80 (1st Cir. 1994); see also Santos-Guaman v. Sessions, 891 F.3d 12, 18-19 (1st Cir. 2018) (remanding to the BIA for failure to apply the childhood standard).  Because we conclude that Varela-Chavarria failed to link her mistreatment to a statutorily protected ground, the error does not warrant remand.

We note, however, that the record is more than sufficient to conclude that Varela-Chavarria's experiences amounted to persecution.  We have no doubt that a young teenager faced with relentless rape threats -- and with them, the specter of forced pregnancy -- would experience these threats as something more than ordinary harassment.  See Villalta-Martinez v. Sessions, 882 F.3d 20, 25 (1st Cir. 2018) (suggesting that a gang member's threat, after holding a pregnant woman at gunpoint in the past, of raping that woman and killing her unborn child if she failed to meet the demands of the gang would constitute persecution); Dubravka Šimonović (Special Rapporteur on Violence Against Women, Its Causes and Consequences), Rape as a Grave, Systematic and Widespread Human Rights Violation, a Crime and a Manifestation of Gender-Based Violence Against Women and Girls, and Its Prevention, U.N. Doc. A/HRC/47/26, at 3 (Apr. 19, 2021) ("[T]he international human rights framework and jurisprudence recognizes rape as a human rights violation and a manifestation of gender-based violence against women and girls that could amount to torture.").  Because

the gang members followed her to and from school, Varela-Chavarria could not escape these threats without giving up her education. And the fear these threats generated in Varela-Chavarria eventually led her to separate from her family and flee her country. Under these circumstances, we struggle to imagine how Varela-Chavarria's mistreatment could be classified as anything other than persecution.

## D. Nexus

Proving persecution, though, does not suffice to obtain asylum. An applicant must also prove nexus: that the persecution was on account of race, religion, nationality, membership in a particular social group, or political opinion. Varela-Chavarria argues that the BIA erred when it found no nexus between her mistreatment and a statutorily protected ground. She contends that the BIA should have recognized that she was persecuted on account of her relationship with her biological mother, Tomasa. Because we have previously recognized that a familial unit can constitute a particular social group, see, e.g., Gebremichael v. INS, 10 F.3d 28, 36 (1st Cir. 1993), she argues that her persecution occurred on account of a protected ground.[5]

---

[5] Varela-Chavarria also briefly argues that the BIA erred by failing to find a nexus between her persecution and her imputed political opinion of being unwilling to comply with the gang's demands. She points to no evidence to support this theory and does not explain why the BIA's conclusion was in error. We therefore find that she has abandoned this argument on appeal.

The BIA's nexus analysis was truncated by its conclusion that Varela-Chavarria waived the right to assert membership in any particular social group, including her immediate family. Accordingly, we begin -- and end -- with the question of whether the BIA erred by declining to address Varela-Chavarria's proposed social groups as grounds for her asylum claim.

"Where an applicant raises membership in a particular social group as the enumerated ground that is the basis of her claim, she has the burden to clearly indicate 'the exact delineation of any particular social group(s) to which she claims to belong.'" Matter of W-Y-C- & H-O-B-, 27 I. & N. Dec. 189, 191 (B.I.A. 2018) (quoting Matter of A-T-, 25 I. & N. Dec. 4, 10 (B.I.A. 2009)). Whether a particular social group is cognizable is a "fact-based inquiry made on a case-by-case basis, depending on whether the group is immutable and is recognized as particular and socially distinct in the relevant society." Id. (quoting Matter of L-E-A-, 27 I. & N. Dec. 40, 42 (B.I.A. 2017)). For this reason, the BIA, which cannot engage in fact-finding, will not address social groups delineated for the first time on appeal. Id.

Here, Varela-Chavarria concedes that she failed to clearly delineate the contours of her proposed social groups to the IJ through her application and testimony. This concession forms the basis of Varela-Chavarria's due process argument: She

- 14 -

contends that, if an applicant neglects to clearly delineate their proposed group to the IJ, as she did, the IJ violates the applicant's due process rights by failing to seek clarification. Thus, the parties do not dispute that Varela-Chavarria's proposed social groups were not properly delineated to the IJ. By extension, we must find that the BIA did not err when it declined to address these social groups on appeal.[6]  See Barnica-Lopez, 59 F.4th at 532.

Our analysis must end here. Because Varela-Chavarria did not delineate a particular social group to which she claimed to belong, she failed to link her asylum claim to any protected

_____

[6] We recognize that, in asking various tribunals to address the merits of her arguments, Varela-Chavarria has been thwarted repeatedly -- first by waiver, and second by administrative exhaustion. Accordingly, we take this opportunity to remind applicants -- and their counsel -- that they have a duty to delineate any legitimate grounds for their asylum claim in the first instance to the IJ. We further note, however, that it is an IJ's statutory duty to assist in developing a sufficient record at the merits hearing to permit meaningful review on appeal, including by clarifying the record on the delineation of a particular social group. This statutory duty should be fulfilled in every case regardless of whether the petitioner is pro se. See 8 U.S.C. § 1229a(b)(1) ("The immigration judge shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." (emphasis added)); Mekhoukh v. Aschroft, 358 F.3d 118, 129 n.14 (1st Cir. 2004) (explaining that this statutory provision obliges an IJ to not only act as "the fact finder and adjudicator but also . . . establish the record" (quoting Yang v. McElroy, 277 F.3d 158, 162 (2d Cir. 2002))); Matter of W-Y-C- & H-O-B-, 27 I. & N. at 191 ("While it is an applicant's burden to specifically delineate her proposed social group, . . . [i]f an applicant is not clear as to the exact delineation of the proposed social group, the Immigration Judge should seek clarification . . . .").

ground.  Accordingly, the BIA appropriately denied the application for asylum, and, by extension, withholding of removal.[7]

### III. CONCLUSION

For all these reasons, we **<u>deny</u>** the petition.

---

[7] The BIA also affirmed the IJ's denial of Varela-Chavarria's application for protection under CAT.  Varela-Chavarria did not argue in her opening brief that the CAT claim was improperly denied, nor does she offer any reason to depart from our longstanding practice of deeming waived any issues raised for the first time in a reply brief.  See United States v. Casey, 825 F.3d 1, 12 (1st Cir. 2016).  We therefore consider any CAT claim waived.