# Matter of S-S-F-M-, Respondent

*Decided by Attorney General September 2, 2025*

U.S. Department of Justice
Office of the Attorney General

*Matter of A-B-*, 28 I&N Dec. 307 (A.G. 2021), is overruled, and immigration judges and the Board shall adhere to *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018), and *Matter of A-B-*, 28 I&N Dec. 199 (A.G. 2021), in all pending or future cases. By extension, *Matter of A-R-C-G-*, 26 I&N Dec. 388 (BIA 2014), and any decision issued in reliance thereupon is also overruled.

## BEFORE THE ATTORNEY GENERAL

Pursuant to 8 C.F.R. § 1003.1(h)(1)(i), I direct the Board of Immigration Appeals ("Board") to refer this case to me for my review. With the case thus referred, I hereby remand to the Board for further consideration consistent with this opinion.

Under the Immigration and Nationality Act ("INA"), the Attorney General may grant asylum to individuals who meet several statutory requirements, including an inability to return to their home country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A); *see* INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A). In *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018) ("*A-B- I*"), Attorney General Sessions clarified the standards that an asylum applicant must meet to establish persecution on account of membership in a "particular social group." *Id.* at 317. If the alleged persecutor is unaffiliated with the government of the applicant's home country, Attorney General Sessions further ruled, then "the applicant must show that flight from her country is necessary because her home government is unwilling or unable to protect her." *Id.* In *Matter of A-B-*, 28 I&N Dec. 199 (A.G. 2021) ("*A-B- II*"), Acting Attorney General Rosen further clarified that standard. In *Matter of A-B-*, 28 I&N Dec. 307 (A.G. 2021) ("*A-B- III*"), however, Attorney General Garland vacated both *A-B- I* and *A-B- II* in anticipation of a rulemaking directed by President Biden. *See* Exec. Order No. 14010, § 4(c)(ii), 86 Fed. Reg. 8267, 8271 (Feb. 2, 2021). Attorney General Garland instructed "immigration judges and the Board [to] follow pre-*A-B-I* precedent" until the completion of that anticipated rulemaking, and particularly *Matter of A-R-C-G-*, 26 I&N Dec. 388 (BIA 2014), which *A-B- I*

had overruled. *A-B- III*, 28 I&N Dec. at 309. That anticipated rulemaking never occurred.

Respondent, a native and citizen of Honduras, applied for asylum claiming she would be persecuted in Honduras on account of her political opinions and membership in several purported particular social groups, including "Honduran women," "Honduran women unable to leave a relationship," "Honduran women who have demonstrated resistance to Honduran society's acceptance of male domination," and "Honduran women with views of women's autonomy." *Matter of S-S-F-M-*, at 1 (BIA Oct. 20, 2023) (unpublished decision). Respondent also claimed that the Honduran government was "unable or unwilling" to control her alleged abuser. *Id.* at 3. The Immigration Judge ("IJ") rejected those claims in part relying on *A-B- I* (which had not yet been vacated) and denied respondent's application for asylum and withholding of removal. *Id.* at 1–2, 2 n.4. The Board affirmed the IJ's decision but declined to rely on *A-B- I*, noting that the decision had been vacated by *A-B- III*. *Id.* Respondent filed a petition for review in the United States Court of Appeals for the Fifth Circuit, which granted the parties' joint motion for remand to allow the Board to reconsider several issues in respondent's appeal, many of which may be implicated by the legal standards articulated in *A-B- I* and *A-B- II*. *S-S-F-M- v. Garland,* No. 23-60586 (5th Cir. Mar. 18, 2024) (unpublished order).

Having considered the case following remand from the Fifth Circuit, I conclude *A-B- III* was incorrect. I hereby reinstitute the legal standards articulated in *A-B- I* and *A-B- II*, and overrule *A-B- III* (and, by extension, *Matter of A-R-C-G-* and any decision issued in reliance thereupon). Furthermore, I remand this matter to the Board for adjudication in light of the standards articulated in *A-B- I* and *A-B- II*.

In my view, *A-B- I*'s analysis and articulation of the standards for deciding asylum applications reflect the "best reading" of the statutory text "applying all relevant interpretive tools." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). *A-B- III* never stated otherwise. Instead, *A-B- III* abandoned the rules established in *A-B- I* and *A-B- II* in deference to an anticipated executive rulemaking that never occurred. But the reasons *A-B- III* gave for doing so are unpersuasive.

*First*, *A-B- III* noted that *A-B- I* contains "broad language" that "could be read to create a strong presumption against asylum claims based on private conduct." 28 I&N Dec. at 309. But *A-B- I* used that language for good reason: It has long been well-established that "[p]ersecution is something a *government* does," *Hor v. Gonzales*, 400 F.3d 482, 485 (7th Cir. 2005), and

so must be "inflicted either by the government of a country or by persons or an organization that the government was unable or unwilling to control." *Matter of Acosta*, 19 I&N Dec. 211, 222 (BIA 1985); *see also Galina v. INS*, 213 F.3d 955, 958 (7th Cir. 2000) (explaining that an applicant must show that the government condoned private actions "or at least demonstrated a complete helplessness to protect the victims"). Although there may be circumstances when a government's failure to control private conduct itself amounts to persecution, *A-B- I* was entirely correct to treat those circumstances as few and far between.

*Second*, *A-B- III* insisted that *A-B- I* "spawned confusion among courts" because one court of appeals found that *A-B- I* announced a "new, more demanding standard" for determining when private conduct can amount to public persecution than the traditional "unable or unwilling" standard. 28 I&N Dec. at 309 (quoting *Grace v. Barr*, 965 F.3d 883, 898 (D.C. Cir. 2020)). But as the Third Circuit subsequently explained, the only court of appeals to express such confusion—the D.C. Circuit—failed to "account for" the full relevant test, "isolate[d] the standards from their surrounding words," and "overlook[ed] the relationships" those words described. *Galeas Figueroa v. Att'y Gen. United States*, 998 F.3d 77, 91 (3d Cir. 2021). *A-B- II*, moreover, explained that *A-B- I* "reiterated and did not change the legal standard for determining when 'persecution' by third parties may be attributed to the government." *See* 28 I&N Dec. at 213; *see also id.* at 202 ("No matter whether *Matter of A-B-* is viewed as changing the existing standard for persecution, I conclude . . . that *Matter of A-B-'s* formulation appropriately clarifies the requisite governmental role in relation to persecution by private actors for purposes of establishing refugee status."). *A-B- II* then clarified the application of that standard. *See id.* at 203–07. If anything, it is Attorney General Garland's decision to vacate that clarification without replacing it with anything himself that has contributed to confusion over the applicable standards in this field.

*Third*, *A-B- III* was wrong to suggest that the issues addressed in *A-B- I* and *A-B- II* are best left to rulemaking. "[W]hether *A-B- I* had changed the 'unable or unwilling' standard, the proper application of that standard, and the meaning of the statutory 'one central reason' test," *A-B- III*, 28 I&N Dec. at 309, are legal questions appropriately resolved as part of the Attorney General's authority to issue "controlling" decisions "with respect to all questions of law" "relating to the immigration and naturalization of aliens," 8 U.S.C. § 1103(a)(1). And as Attorney General Barr explained in a different opinion that I am reinstituting as precedent today, what constitutes a cognizable social group is "defined with sufficient particularity and is socially distinct in [an applicant's] society" is inherently a "fact-based

inquiry." *Matter of L-E-A-*, 27 I&N Dec. 581, 586 (A.G. 2019). That such an inquiry is better resolved through case-by-case adjudication than broad-based rulemaking is confirmed by the failure of the previous administration to issue any rule addressing the meaning of "particular social group" over almost three years—despite a (now rescinded) Executive Order requiring that the Secretary of Homeland Security and Attorney General do so "within 270 days." Exec. Order No. 14010, § 4(c)(ii), 86 Fed. Reg. at 8271; *see* Exec. Order No. 14148, § 2(u), 90 Fed. Reg. 8237, 8238 (Jan. 20, 2025) (rescinding Executive Order 14010). Accordingly, I hereby instruct that immigration judges and the Board shall adhere to *A-B- I* and *A-B- II* in all pending or future cases, and disregard *A-B- III*. I remand this matter to the Board for further proceedings consistent with this opinion, and with the opinions in *A-B- I* and *A-B- II*.