**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-11483

Non-Argument Calendar

_____

SENIA YAMILETH MATUTE-RIVERA,
SOFIA NICOLLE VALLADARES-MATUTE,

                                                          *Petitioners,*

*versus*

U.S. ATTORNEY GENERAL,

                                                          *Respondent.*

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A206-693-562

_____

Before JORDAN, BRANCH, and KIDD, Circuit Judges.

PER CURIAM:

Senia Matute-Rivera and her daughter, Sofia,[1] petition this Court for review of the Board of Immigration Appeal's ("BIA") order dismissing their appeal of the Immigration Judge's ("IJ") decision denying their application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). Specifically, the BIA determined that the petitioners waived any challenge to the IJ's determination that they did not establish that the Honduran government was unwilling or unable to protect Matute-Rivera.[2] Matute-Rivera argues that the BIA erred in concluding that she waived this issue because she argued that the IJ applied the wrong legal standard in analyzing her asylum and withholding of removal claim based on her membership in a particular social group, which was sufficient to implicitly challenge the IJ's determination that she had not shown that the Honduran government was unwilling or unable to protect her. After careful review, we deny the petition for review.

## I.    Background

Matute-Rivera and her then-minor-daughter, natives and citizens of Honduras, entered the United States without inspection in April 2014. At that time, the Department of Homeland Security

---

[1] Sofia is a derivative beneficiary of her mother's asylum claim.

[2] The BIA also concluded that the petitioners waived any challenge to the IJ's determination that they were ineligible for CAT relief. However, Matute-Rivera does not challenge that determination in her petition for review. Accordingly, we do not address it.

issued them notices to appear ("NTA"), charging them with being removable under 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without being admitted or paroled. At a hearing before the IJ, Matute-Rivera conceded that she and her daughter were removable and indicated that she would be filing an application for asylum.

Matute-Rivera thereafter filed an application seeking asylum, withholding of removal, and CAT relief based on political opinion and membership in a particular social group. She alleged that the father of her children physically and emotionally abused her and that she feared he would harm her if she returned to Honduras. In a supporting statement, Matute-Rivera stated that Gerson Valladares was the father of her two children. He became physically abusive when she confronted him about him seeing another woman. He abused her multiple times, but she did not report the abuse to the Honduran police because she was afraid that he would take the children and then kill her. She decided to come to the United States because "he wanted to have two women and [she] did not accept that." He threatened to kill her if he found her with another man. She secretly left Honduras with their daughter and left their son with another family member in Honduras. Valladares threatened to "take revenge" if she returned to Honduras. Their son now lives with Valladares and "the other woman," and Valladares physically abuses him and does not allow him to communicate with Matute-Rivera.

At the hearing before the IJ on her asylum application, Matute-Rivera's counsel clarified that the basis for the political opinion ground was "the opinion of being against violence against women," and the claimed social group was a "mother of a son and daughter." Matute-Rivera testified that she and Valladares were never married, and he was the father of her daughter Sofia and son Gerson.[3] She explained that she left Honduras in 2014 because Valladares began physically abusing her after she became pregnant with their son in 2012. At times he threatened to kill her, and she feared for her life. She confirmed that she never went to the police because she thought it would make things worse and that he might kill her. She feared returning to Honduras because Valladares had threatened to take revenge on her for leaving with their daughter if she returned.

The IJ found Matute-Rivera's testimony to be credible. However, the IJ found that nothing in the record suggested that Matute-Rivera's partner abused her due to her actual or imputed political opinion.

Turning to her alleged membership in a particular social group of a "mother of a son and daughter," the IJ determined that this particular social group was not defined with particularity and was therefore not a cognizable social group. Additionally, the IJ concluded that Matute-Rivera had failed to establish that the Honduran government was unable or unwilling to protect her

---

[3] Matute-Rivera had another son by another man while living in the United States.

25-11483                Opinion of the Court                5

from these private acts of violence, citing *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018).  Accordingly, the IJ concluded that Matute-Rivera was ineligible for asylum or withholding of removal relief based on membership in a particular social group.  Finally, the IJ also found that she failed to establish eligibility for CAT relief.

Matute-Rivera, through counsel, appealed to the BIA, stating in her notice of appeal that she "presented a plausible political asylum based case," and that she "believe[d] the immigration judge erred in not granting relief."  In her brief to the BIA, she argued that the IJ erred in finding no cognizable particular social group as to her claims for asylum and withholding of removal.  Specifically, she argued that when the IJ denied her application, he relied on the then-governing legal standard set forth in *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018) ("*A-B- I*") and *Matter of A-B-*, 28 I. & N. Dec. 199 (A.G. 2021) ("*A-B- II*"), which had overruled *Matter of A-R-C-G-*, 26 I. & N. Dec. 388 (BIA 2014).  However, Matute-Rivera explained that, since the IJ's decision, the then-Attorney General in *Matter of A-B-*, 28 I. & N. Dec. 307 (A.G. 2021) ("*A-B-III*"), had vacated *A-B-I* and *A-B-II* and reinstated *Matter of A-R-C-G-*.[4]  And she maintained that, in *Matter of A-R-C-G-*, the BIA had "recogniz[ed] as a valid particular social group women who have suffered acts of violence by their partner and who are

---

[4] We note that a few months after the BIA issued its decision, the current Attorney General overruled *A-B-III*, and *Matter of A-R-C-G-*, and reinstated the framework in *A-B-I* and *A-B-II*.  *See Matter of S-S-F-M-*, 29 I. & N. Dec. 207, 207 (A.G. 2025).

6                        Opinion of the Court                        25-11483

unable to leave their relationships."  Accordingly, Matute-Rivera argued that she qualified for a particular social group based on the reinstated *Matter of A-R-C-G-* decision, and that given the change in the law, the BIA or the IJ needed to reevaluate the determination that she did not allege a cognizable social group.  Matute-Rivera did not address the IJ's determination that she had not shown that the Honduran government was unwilling or unable to protect her.[5]

The BIA dismissed her appeal on the ground that she failed to "meaningfully challenge the [IJ's] determination[] that [she] did not establish . . . that the Honduran government was unwilling or unable to protect her."  Thus, the BIA determined that Matute-Rivera waived this issue, and, therefore, had not met her burden of establishing eligibility for asylum or withholding of removal. Finally, the BIA declined to remand the proceedings based on the intervening change in law identified by Matute-Rivera because that change in law did "not affect [her] waiver of the [IJ's] determination regarding whether the Honduran government was unwilling or unable to protect [her]."  Petitioners filed a timely petition for review with this Court.

---

[5] We note that, even under *Matter of A-R-C-G-*, the respondent had to demonstrate that the government was unwilling or unable to control the private actor.  *See Matter of A-R-C-G-*, 26 I. & N. Dec. at 395.  Thus, regardless of which precedent applied, in order to prevail on her asylum claim, Matute-Rivera had to demonstrate that the Honduran government was unable or unwilling to protect her.

## II.    Discussion

Matute-Rivera argues that the BIA erred in concluding that she waived any challenge to the IJ's determination that she had not shown that the Honduran government was unwilling or unable to protect her  because she argued that the IJ applied the wrong legal standard in analyzing her asylum and withholding of removal claim based on membership in a particular social group, which was sufficient to implicitly challenge the IJ's government protection determination.

"Generally, [we] review[] only the BIA's decision, except to the extent the BIA expressly adopted the IJ's opinion or agreed with the IJ's reasoning." *Alvarado v. U.S. Att'y Gen.*, 984 F.3d 982, 988 (11th Cir. 2020).

"The BIA has discretion to summarily dismiss claims where the record clearly indicates that the applicant has waived her right to appeal." *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1144 (11th Cir. 2010).  We review the BIA's determination that the petitioner waived an issue for abuse of discretion.  *Id.* at 1145.  To determine whether the BIA abused its discretion, we examine "whether the BIA acted arbitrarily or capriciously in making [its waiver] determination." *Id.*

"Generally, when an appellant fails to offer argument on an issue, that issue is deemed abandoned." *Id.*  In the immigration context, "[i]n order to avoid a waiver of appeal, the [petitioner's] Notice of Appeal or any attachments thereto must specifically identify the findings of fact, the conclusions of law, or both, that

are being challenged." *Id.* (citing 8 C.F.R. § 1003.3(b)). "If a question of law is presented, supporting authority must be cited. If the dispute is over the findings of fact, the specific facts contested must be identified." 8 C.F.R. § 1003.3(b).

As part of the burden of establishing asylum eligibility, an applicant "must show not only past persecution or a well-founded fear of future persecution [on account of a protected ground], but also that she is unable to avail herself of the protection of her home country." *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007); *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 950 (11th Cir. 2010) ("An applicant for asylum who alleges persecution by a private actor must prove that [her] home country is unable or unwilling to protect [her] because [t]he statutes governing asylum and withholding of removal protect . . . against persecution by non-governmental groups that the government cannot control." (quotations omitted)).

Here, the BIA did not abuse its discretion in determining that Matute-Rivera waived any challenge to the IJ's determination that she failed to show that the Honduran government was unwilling or unable to protect her. In order to prevail on her asylum or withholding or removal claim, Matute-Rivera had to show not only persecution on account of her membership in a particular social group, but also that she was "unable to avail herself of the protection of [Honduras]." *Lopez*, 504 F.3d at 1345; *Ayala*, 605 F.3d at 950. The IJ determined that she failed to demonstrate either requirement. However, on appeal to the BIA,

25-11483                Opinion of the Court                9

Matute-Rivera addressed only the IJ's finding that she failed to establish a cognizable particular social group. She did not address the additional requirement that, even if she established that she was a member of a particular social group, she must demonstrate that she was unable to avail herself of the protection of the Honduran government. While we agree that hyper-technical or perfectly labeled arguments are not required to preserve issues, Matute-Rivera's argument to the BIA—that the law had changed rendering the IJ's determination that she failed to establish a cognizable social group erroneous—was not sufficient to preserve a challenge to the IJ's government protection determination. Accordingly, the BIA did not abuse its discretion in determining that she waived this issue, which necessarily precluded her from establishing eligibility for asylum or withholding of removal.[6] *Lapaix*, 605 F.3d at 1144–45; *Lopez*, 504 F.3d at 1345; *Ayala*, 605 F.3d at 950.

---

[6] Matute-Rivera also argues that the BIA failed to give reasoned consideration to her claim by failing to address the merits of her claim under the correct legal framework and that remand is warranted so that her asylum claim can be properly considered under the restored *Matter of A-R-C-G-* framework. We disagree. The BIA gave reasoned consideration to Matute-Rivera's claim, and relied on well-established principles of waiver in determining that it need not reach the merits and that a remand was not warranted. *See Jathursan v. U.S. Att'y Gen.*, 17 F.4th 1365, 1372 (11th Cir. 2021) ("To determine whether the Board gave reasoned consideration to a petition, we inquire only whether the Board considered the issues raised and announced its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." (quotations omitted)).

10                     Opinion of the Court                     25-11483

For the above reasons, we deny the petition for review.

**PETITION DENIED.**