# United States Court of Appeals
## For the First Circuit

No. 24-1895

GESSIKA ALVES-PAINS; IURI SILVA-GONCALVES; R.S.P.; I.F.G.P.;
E.S.P.,

Petitioners,

v.

TODD W. BLANCHE,[*] Acting Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Dunlap, Lynch, and Kayatta,
Circuit Judges.

Randy Olen on brief for petitioners.
Arthur L. Rabin, Trial Attorney, Office of Immigration
Litigation, Civil Division, U.S. Department of Justice, Brett A.
Shumate, Assistant Attorney General, Civil Division, and Anna
Juarez, Senior Litigation Counsel, Office of Immigration
Litigation, on brief for respondent.

June 18, 2026

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2),
Acting Attorney General Todd W. Blanche is automatically
substituted for former Attorney General Pamela J. Bondi as
respondent.

**LYNCH**, **Circuit Judge**. Gessika Alves-Pains, her three minor children, I.F.G.P., R.S.P., and E.S.P., listed from oldest to youngest, and her husband, Iuri Silva-Goncalves, the father of the two younger children, are natives and citizens of Brazil who entered the United States near Otay Mesa, California, without inspection in 2021. They petition for review of a decision by the Board of Immigration Appeals ("BIA") denying their joint motion to reconsider its dismissal of their appeal from the Immigration Judge's ("IJ") denial of asylum. Petitioners did not petition for review of the BIA's earlier decision dismissing their appeal from the denial of relief.

Our jurisdiction is limited to the BIA's denial of the motion to reconsider. See Diaz-Valdez v. Garland, 122 F.4th 436, 442 (1st Cir. 2024). We review that denial of reconsideration for abuse of discretion and will thus uphold it "unless it lacks 'a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'" Id. (alterations in original) (some internal quotation marks omitted) (quoting Onwuamaegbu v. Gonzales, 470 F.3d 405, 407 (1st Cir. 2006)). In the context of removal proceedings, a motion to reconsider "shall specify the errors of law or fact in the previous order and shall be supported by pertinent authority." 8 U.S.C. § 1229a(c)(6)(C). Such a motion is "intended only to cure errors (factual or legal) in the prior BIA decision," and it may not merely "regurgitate[]

- 2 -

contentions that were previously made and rejected" or "submit, in essence, the same brief presented on appeal." Kuffour v. Sessions, 907 F.3d 112, 114 (1st Cir. 2018) (alteration in original) (first quoting Martinez-Lopez v. Holder, 704 F.3d 169, 172 (1st Cir. 2013); then quoting Liu v. Mukasey, 553 F.3d 37, 39 (1st Cir. 2009); and then quoting In re O-S-G-, 24 I. & N. Dec. 56, 58 (B.I.A. 2006)). Here, petitioners argued in their motion to reconsider that the BIA's direct appeal decision contained errors of law or overlooked aspects of the case as to the two proposed particular social groups ("PSGs") on which Alves-Pains relied.

Alves-Pains's asylum application was based on her alleged abuse by Jose Antonio de Oliveira Gomes, whom she never married but who is the father of her eldest child, I.F.G.P. They had an approximately two-year relationship in Brazil, which ended when she left him in late 2009. She later began a relationship with Silva-Goncalves, now her husband, and had her two younger children with him, all before they entered the United States.[1]

---

[1] At the time of their entry into the United States, I.F.G.P. was twelve years old, R.S.P. was three, and E.S.P. was one. Alves-Pains's asylum application included Silva-Goncalves and the three children as derivative beneficiaries. "[D]erivative asylum refers to the fact that certain family members of asylees can be granted asylum as derivatives (or 'riders' as they are also sometimes called) of their family member's asylum application." Pazine v. Garland, 115 F.4th 53, 61 n.2 (1st Cir. 2024). Because "noncitizens cannot derive withholding of removal or [Convention Against Torture ("CAT")] protection," id., each family member also filed an individual application for relief. Those individual

- 3 -

Represented by counsel, Alves-Pains argued that Gomes's abuse of her constituted past persecution and supported a fear of future persecution on account of two different proposed PSGs. The first PSG she proposed was "Brazilian women who are unable to leave relationships with the fathers of their children." The second PSG she proposed was "perceived immediate family member of . . . Gomes as mother in a nuclear family where the persecutor is the father and [I.F.G.P.] . . . is the child."

The BIA denied reconsideration. As to the first proposed PSG, the BIA reiterated that Alves-Pains had not "establish[ed] that she was at any time a member of the proposed" group because she had "left the relationship with [Gomes] many years ago," and the record did not show that she was "ever unable [to] leave that relationship." As to the second proposed PSG, the BIA adhered to its conclusion that petitioners could not "establish the requisite particularity" because the group was "defined explicitly by the subjective perception of an unknown viewer or viewers." Because petitioners have not shown that either PSG argument met the requirements for reconsideration, we deny the petition.

applications relied on Alves-Pains's account of Gomes's abuse, and no petitioner besides Alves-Pains submitted a written declaration. On direct appeal, the BIA affirmed the IJ's denial of withholding of removal and CAT protection. Petitioners did not seek reconsideration of those aspects of the BIA's decision, nor do they attempt to develop any withholding or CAT argument before us.

To understand the issues here, it helps to briefly outline what happened in the IJ's initial denial of asylum and the BIA's dismissal of the appeal from that denial of relief. In joint removal proceedings before the IJ, petitioners, through counsel, admitted the factual allegations in the notices to appear and conceded inadmissibility, and each sought asylum, withholding of removal, and protection under the Convention Against Torture.

At the two day merits hearing, Alves-Pains was the principal witness.[2] Because the BIA assumed her credibility in dismissing petitioners' appeal,[3] and because the government makes no argument to us that Alves-Pains was not credible, we recount, in the light most favorable to her credibility, the basic facts drawn from her testimony and July 28, 2023, written declaration.

While living in Brazil, Alves-Pains began dating Gomes in 2007, when she was fifteen. About a year later, she moved in

---

[2] At the first merits hearing on August 31, 2023, Alves-Pains testified at length as the only witness. When the hearing resumed on January 30, 2024, the IJ and counsel questioned her further, and Silva-Goncalves testified only about when he met Alves-Pains and when their romantic relationship began. Petitioners also relied on documentary evidence, including Alves-Pains's July 28, 2023, written declaration, a Brazilian police report documenting her complaint against Gomes, letters from her mother and brother, materials pertaining to her reported psychological treatment and evaluation, and country conditions evidence concerning domestic violence and violence against women in Brazil.

[3] As we explain later, the IJ had found Alves-Pains not credible and had stated his reasons on the record.

with him, and three months after that she became pregnant with her first child, I.F.G.P. During her pregnancy, Gomes kept Alves-Pains locked inside the house while he was at work. After their baby was born, Gomes became physically and sexually abusive toward Alves-Pains. In January 2009, about three weeks after I.F.G.P.'s birth, Alves-Pains left Gomes with her family's help and stayed at her mother's home for a week, but returned to Gomes after he apologized and promised not to abuse her again. Within two months of her return, the abuse resumed and worsened. She testified that Gomes beat her on numerous occasions, raped her more than twenty times, threatened her with a knife, called her a whore, pressed a broomstick against her neck, and told her that he would kill her.

By early October 2009, Alves-Pains had permanently separated from Gomes. She testified that, in response, Gomes soon made threats to "invade" her home and kill her relatives, and he loitered near her house almost every day. In December 2009, Alves-Pains reported Gomes's threats to the police and obtained a restraining order. She testified that Gomes did not respect the restraining order and continued to threaten her after she left the relationship.

In 2014, Alves-Pains began a relationship with Silva-Goncalves, with whom she had two children while they lived together in the city of Governador Valadares. Over the decade from 2010 until 2021, Alves-Pains did not see Gomes in person. In

April 2021, Alves-Pains met Gomes at the local registrar's office so that he could sign I.F.G.P.'s passport application, which he did without incident. Petitioners left Brazil together three months later. Alves-Pains testified that Gomes had not contacted her since she arrived in the United States.

The IJ denied relief to petitioners and ordered them removed to Brazil. He found Alves-Pains not to be credible based on what he believed were significant, unexplained inconsistencies among her testimony, written declaration, and other documentary evidence.

Petitioners timely appealed to the BIA. On June 14, 2024, the BIA dismissed their appeal, assuming Alves-Pains's credibility but reasoning that she had not established eligibility for asylum. The BIA determined that Alves-Pains was not a member of the first proposed PSG, "Brazilian women who are unable to leave relationships with the fathers of their children," because, by her own testimony, she had left Gomes "years ago" and was now in a relationship with Silva-Goncalves. The BIA also held that the second proposed PSG, "perceived immediate family member of . . . Gomes as mother in a nuclear family where the persecutor is the father and [I.F.G.P.],"[4] lacked particularity because it was

_____

[4] As petitioners pointed out in their motion for reconsideration, the BIA's decision dismissing their appeal omitted the words "is the child" after the reference to I.F.G.P.

- 7 -

defined not by "immutable family relationships[] but by the subjective perception of an unknown viewer or viewers," such that membership in the proposed group could change "depending on whose viewpoint is used." Petitioners did not petition for review of the BIA's decision dismissing their appeal.

On July 15, 2024, petitioners filed a timely joint motion asking the BIA to reconsider its dismissal of their appeal solely as to asylum. The motion challenged the BIA's analysis of Alves-Pains's two proposed PSGs.[5] On August 30, 2024, the BIA denied reconsideration, stating the reasons we described earlier.

Petitioners timely petitioned this court for review.

**II.**

An applicant for asylum must qualify as a "refugee" within the meaning of the INA. 8 U.S.C. § 1158(b)(1)(A). A refugee is someone who is "unable or unwilling to return [to] or to avail herself of the protection of her own country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a [PSG], or political opinion." Espinoza-Ochoa v. Garland, 89 F.4th 222, 230 (1st Cir.

_____

in this PSG definition. This omission is not material to our resolution of the claims now before us. See infra note 10.

[5] Petitioners' motion also asked the BIA to revisit all arguments raised in their appeal brief. The BIA rejected that request because it did not specify, or even allege, any factual or legal error in the prior decision, as required by 8 U.S.C. § 1229a(c)(6)(C).

- 8 -

2023) (first alteration in original) (internal quotation marks omitted) (quoting De Pena-Paniagua v. Barr, 957 F.3d 88, 92 (1st Cir. 2020)); see also 8 U.S.C. § 1101(a)(42)(A).

"[A]n applicant seeking relief based on his membership in a PSG 'must establish that the group is: (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'" Espinoza-Ochoa, 89 F.4th at 231 (quoting Paiz-Morales v. Lynch, 795 F.3d 238, 244 (1st Cir. 2015)). "[A] group is considered particularly defined where it is discrete and ha[s] definable boundaries -- it must not be amorphous, overbroad, diffuse[,] or subjective." Alvarado-Reyes v. Garland, 118 F.4th 462, 472 (1st Cir. 2024) (second alteration in original) (internal quotation marks omitted) (quoting Cabrera v. Garland, 100 F.4th 312, 321 (1st Cir. 2024)). "Whether a proposed PSG is cognizable is ultimately a legal question," Ramos-Hernandez v. Bondi, 163 F.4th 44, 51 (1st Cir. 2025), while whether an applicant is a member of a proposed PSG is a question of fact, Matter of W-Y-C- & H-O-B-, 27 I. & N. Dec. 189 (B.I.A. 2018). And "[t]he burden of showing membership in a legally cognizable group rests with the applicant." Espinoza-Ochoa, 89 F.4th at 231.

## III.

We see no abuse of discretion in the BIA's conclusion that petitioners had shown no factual or legal error in its earlier

decision dismissing their appeal from the IJ's denial of relief. Petitioners' arguments to us rely on mischaracterizations of what the BIA actually held in denying reconsideration.

Petitioners first argue that the BIA abused its discretion in denying reconsideration as to the proposed PSG of "Brazilian women who are unable to leave relationships with the fathers of their children." They contend that the BIA erred as a matter of law by treating Alves-Pains's eventual separation from Gomes as defeating her claimed membership in that PSG and, in turn, her asylum claim based on that PSG, rather than asking whether she was unable to leave during the period of alleged persecution. That argument misstates what the BIA actually held. In its decision denying reconsideration, the BIA explained that it had rejected Alves-Pains's "claim of past and feared future persecution" on account of that PSG because she "did not establish that she was at any time a member" of the group: She had "left the relationship with [Gomes] many years ago," and "the record does not establish that [she] was ever unable [to] leave that relationship." In doing so, the BIA acknowledged that "'societal expectations about gender and subordination, as well as legal constraints regarding divorce and separation' may determine whether a woman can leave a domestic relationship." (quoting Matter of A-R-C-G-, 26 I. & N. Dec. 388, 393 (B.I.A. 2014)). The BIA also reasoned that, "even if" Alves-Pains had been "previously unable to leave the relationship

- 10 -

and only later became able to leave," "the group membership would not be immutable, and would not be cognizable as a [PSG] for that reason." (citing Matter of W-G-R-, 26 I. & N. Dec. 208, 212-13 (B.I.A. 2014); Matter of M-E-V-G-, 26 I. & N. Dec. 227, 237 (B.I.A. 2014)).[6]

As the government points out, an applicant who relies on a PSG must show not only that the group is cognizable, but also that she is a member of that group. See Paiz-Morales v. Lynch, 795 F.3d 238, 243-44 (1st Cir. 2015). Contrary to petitioners' argument, the BIA did not deny reconsideration on the categorical ground that a woman who later escapes an abusive relationship can never belong to a so-called "unable to leave" PSG. Rather, the BIA made a case-specific determination that Alves-Pains had not established that she was ever unable to leave Gomes. The record supports the conclusion that, even during the period of Gomes's abuse, Alves-Pains was not unable to leave the relationship. At no point were Alves-Pains and Gomes married. Their relationship lasted only about two years. The physical abuse started around

---

[6] Petitioners' reply brief makes an argument that they did not make to the BIA. They refer to Gomes's threat, recounted in Alves-Pains's written declaration, that she would leave the relationship only "in a coffin," as evidence that she was unable to leave him during the period of alleged abuse. The BIA did not abuse its discretion by not mentioning an argument that was not made to it. See, e.g., Hurtado v. Lynch, 810 F.3d 91, 93 (1st Cir. 2016) (holding that the BIA did not abuse its discretion in denying reconsideration where petitioner's new arguments were "previously available but not previously asserted").

January 2009, and Alves-Pains quickly left Gomes. Although she returned to Gomes that time, she did so of her own volition, under no threat from Gomes. And when the abuse restarted, she left again a few months later, this time for good, more than a decade before she entered the United States. She also obtained an immediate restraining order against Gomes and in 2014, began a new relationship with Silva-Goncalves. By her own account, she did not see Gomes in person for more than a decade, from 2010 until April 2021, and Gomes had not contacted her since she arrived in the United States in July 2021. See Cardona v. Sessions, 848 F.3d 519, 522-24 (1st Cir. 2017) (holding that the BIA did not abuse its discretion in denying reconsideration where petitioner had not shown she was a member of her own proposed PSGs); Rivas-Durán v. Barr, 927 F.3d 26, 30, 32-33 (1st Cir. 2019) (denying petition for review of BIA decision vacating IJ's grant of asylum where applicant failed to demonstrate membership in proposed PSG of "women in El Salvador unable to leave a domestic relationship" because the record did not show a domestic or ongoing relationship); Miranda-Bojorquez v. Barr, 937 F.3d 1, 6 (1st Cir. 2019) (denying petition for review of BIA decision dismissing appeal where substantial evidence supported finding that petitioner was not a member of proposed PSG of "male minor children dependent on and who cannot leave their families" because he was

no longer a minor and had been able to leave abusive relatives).[7]

Petitioners' reliance on Matter of A-R-C-G-, 26 I. & N. Dec. 388 (B.I.A. 2014), is mistaken. Before it was overruled, A-R-C-G- held only that, on the facts and evidence presented there, "married women in Guatemala who are unable to leave their relationship" could constitute a cognizable PSG.[8] Id. at 392-93, overruled by Matter of S-S-F-M-, 29 I. & N. Dec. 207 (A.G. 2025). There, the BIA emphasized that the proposed group was "not defined by the fact that the applicant is subject to domestic violence." Id. at 393 n.14. It explained that whether an applicant is unable to leave a relationship depends on the "particular facts and evidence in a case," including the applicant's "own experiences"; whether dissolution of the marriage would be "contrary to religious or other deeply held moral beliefs" or possible "in light of

---

[7] Petitioners are not helped by citing to Juan Antonio v. Barr, 959 F.3d 778 (6th Cir. 2020), which concerned issues in fact not present in this case. There, on a petition for review of a BIA decision affirming the IJ's denial of asylum and withholding, the Sixth Circuit held that physical separation did not necessarily defeat membership in a PSG of "married (indigenous) women in Guatemala who are unable to leave their relationships" where the applicant remained married to her abuser, had been unable to obtain a divorce, continued to face death threats from him after separation, and later learned that he had submitted a petition to attempt to locate her and compel her return. See id. at 788-92.

[8] After petitioners filed their opening brief, the Attorney General expressly overruled A-R-C-G-. See Matter of S-S-F-M-, 29 I. & N. Dec. 207, 207 (A.G. 2025). We need not decide what effect, if any, S-S-F-M- has on this petition because, as we explain, A-R-C-G- does not support petitioners' argument in any event.

- 13 -

religious, cultural, or legal constraints"; and "more objective evidence, such as background country information." Id. at 393. The facts in A-R-C-G- were materially different as well: The applicant was married to her abuser, repeatedly tried to leave the relationship, was found by her husband and threatened with death if she did not return to him, and was told by police that they "would not interfere in a marital relationship." See id. at 389.

Nor is this case at all like De Pena-Paniagua v. Barr, 957 F.3d 88 (1st Cir. 2020). The BIA here did not adopt any categorical rule such as was involved in De Pena-Paniagua. See id. at 89, 92-93. And De Pena-Paniagua did not decide whether the petitioner belonged to any proposed PSG, noting that the IJ had not addressed that issue and that the government had not contested it. See id. at 91, 94, 98. No decision that petitioners cite relieves an applicant of the burden to establish membership in the PSG on which she relies.[9] See Espinoza-Ochoa, 89 F.4th at 231.

Petitioners also argue that the BIA abused its

_____

[9] Petitioners also argue that the BIA failed to consider Alves-Pains's eligibility for humanitarian asylum based on her first proposed PSG. That argument is mistaken. The BIA expressly addressed that theory and rejected it because Alves-Pains had not shown membership in that PSG and, for that reason, had not established past persecution on account of a protected ground. See De La Cruz-Quispe v. Bondi, 161 F.4th 17, 22 n.2 (1st Cir. 2025) (explaining that humanitarian asylum is available only where the applicant first establishes past persecution on account of a protected ground); see also 8 C.F.R. § 1208.13(b)(1)(iii). We thus need not decide whether asylum could have been granted under either § 1208.13(b)(1)(iii)(A) or (B).

- 14 -

discretion in denying reconsideration as to Alves-Pains's proposed PSG of "perceived immediate family member of . . . Gomes, as mother in a nuclear family where the persecutor is the father and [I.F.G.P.] . . . is the child."[10]  They contend that the BIA, despite their chosen wording, should have treated their counsel's formulation as being a "clearly delineated" nuclear family group consisting of Alves-Pains, Gomes, and I.F.G.P.  Not so.

The BIA did not question that a nuclear family may, in appropriate circumstances, be a cognizable PSG.  See Sanchez v. Garland, 74 F.4th 1, 6 (1st Cir. 2023).  Rather, the BIA reiterated that petitioners could not establish particularity because the group that counsel proposed was "defined explicitly by the subjective perception of an unknown viewer or viewers."  In doing so, the BIA applied the requirement, articulated in its decisions in M-E-V-G-, 26 I. & N. Dec. 227, 239 (B.I.A. 2014), and W-G-R-, 26 I. & N. Dec. 208, 214 (B.I.A. 2014), that a PSG be defined by characteristics providing "a clear benchmark for determining who falls within the group."  The BIA also explicitly cited to

---

[10] Petitioners argued in their motion to reconsider that the BIA had misarticulated the second proposed PSG by omitting the phrase "is the child" after its reference to I.F.G.P., which they said changed, or possibly obscured, the meaning of the proposed group.  The BIA held, however, that the omission did not affect its determination that the proposed group lacked particularity.  Petitioners have not developed any separate challenge to that ruling before this court, so any such argument is waived.  See United States v. Abbas, 165 F.4th 659, 676 n.16 (1st Cir. 2026).

- 15 -

Perez-Rabanales v. Sessions, 881 F.3d 61 (1st Cir. 2018), which explained that a group description "so amorphous as to preclude a rational determination of group membership" cannot be sufficiently particular. Id. at 66. The BIA then rejected petitioners' contention that the issue with its proposed PSG was "nothing more than semantics." The BIA quoted Varela-Chavarria v. Garland, 86 F.4th 443 (1st Cir. 2023), to hold that an applicant bears the burden to "clearly indicate" the "exact delineation" of the PSG on which she relies, id. at 452 (citation modified), and concluded that the flaws it had identified in petitioners' proposed PSG were "based on substance, not semantics," because "[d]efining the same group using other language would not cure its lack of cognizability." As the government notes, the BIA's reference to the perception of an "unknown viewer or viewers" tracked the word "perceived" in petitioners' own formulation of the group.

To be sure, the agency may not assess a proposed PSG by taking only a "superficial 'quick look'" at the words used, but must instead conduct a "substantive analysis." Espinoza-Ochoa, 89 F.4th at 233. The BIA's decision meets that analytical standard. As the BIA recognized, petitioners' counsel did not formulate a PSG defined simply by Alves-Pains's actual membership in a nuclear family. As worded, the proposed group required some unidentified viewer or viewers to perceive Alves-Pains as Gomes's immediate family member and as the mother in a nuclear family, Gomes as both

- 16 -

the father and the persecutor in that family, and I.F.G.P. as the child.  See Aguilar-De Guillen v. Sessions, 902 F.3d 28, 36 (1st Cir. 2018) (holding that a proposed PSG lacked particularity where one component of membership in the group was an "'open question,' and possibly a subjective determination" (quoting Paiz-Morales, 795 F.3d at 244)).  The BIA properly declined, on reconsideration, to replace the PSG that counsel crafted and proposed to the IJ with one that was substantively different.  See Varela-Chavarria, 86 F.4th at 452; see also Matter of W-Y-C- & H-O-B-, 27 I. & N. Dec. 189, 192 (B.I.A. 2018) (noting that the BIA will generally not consider "a new social group that is substantially different from the one delineated below"); Barnica-Lopez v. Garland, 59 F.4th 520, 532 (1st Cir. 2023) (finding no error where the BIA declined to consider proposed PSGs that were, "on their face, linguistically and logically different from th[e] [PSG] proposed to the IJ").

The petition for review is **denied**.